## Richmond

COLONIAL FORD TRUCK SALES, INC.

V.

HARRY SCHNEIDER, ET AL.

Record No. 812157.

January 18, 1985.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Russell, JJ., and Harrison, Retired Justice.

672

*James W. Tredway, III (William F. Etherington; Christian, Barton, Epps, Brent & Chappell,* on briefs), for appellant.

*Dennis T. Lewandowski (J. A. Lucas; Hunton & Williams,* on brief), for appellees.

POFF, J., delivered the opinion of the Court.

This is a plaintiff's appeal from a judgment sustaining the defendants' demurrer on the ground that "the claims asserted by the plaintiff . . . are barred by the Statute of Frauds". Under familiar principles, we consider as true all allegations of material facts. *Ames* v. *American National Bank,* 163 Va. 1, 37, 176 S.E. 204, 215 (1934).

Colonial Ford Truck Sales, Inc. (Ford), filed a two-count motion for judgment against Harry Schneider (Schneider) and two corporations of which he was president and principal owner, *viz.,* Schneider's Investment Corp. and Schneider's Leasing & Repair, Inc., d/b/a Schneider Transport (collectively, the Schneider corporations). The Schneider corporations owned a share of Morton Transfer, Inc. (Morton). Schneider's brother, Morton Schneider, was president and part owner of Morton, and the three corporations conducted their businesses in the same building.

Beginning in August 1980, Ford made several shipments of automotive parts to that building. The invoices showed that the goods were "Sold To" Morton. In April 1981, Ford acquired a default judgment against Morton in the sum of $37,068.11. Morton notified Ford that it was no longer doing business, that it had

sold some of its vehicles to the Schneider corporations, and that it was unable to pay its creditors.

Ford then filed this action against Schneider and the Schneider corporations. In the first count, Ford claimed $37,068.11 in damages for breach of an oral contract. Ford alleged that it had been induced to supply the parts to Morton because Schneider, acting in proper person and as agent for his corporations, had promised that "Ford would be paid for all parts and equipment furnished directly to Morton" and that "Ford would 'not lose a penny' ". Ford further alleged that some of the parts had been installed on the Schneider vehicles, that some had been installed on Morton vehicles pledged as collateral for a bank loan, that the money Schneider paid when it acquired Morton's vehicles had been applied to curtail Morton's bank loan, a debt guaranteed by Schneider, and, consequently, that the defendants "benefited directly . . . and had a personal, immediate, and pecuniary interest in the transaction."

We consider first whether Ford's contract claim was barred by the statute of frauds. "No action shall be brought . . . [t]o charge any person upon a promise to answer for the debt, default, or misdoings of another . . . [u]nless the promise . . . be in writing." Code § 11-2(4). Ford concedes that Schneider's promises were oral but contends that the statute does not apply to its contract claim because those promises "were original undertakings for which defendants received direct benefits."

Ford cites *Lawson* v. *States Constr. Co.,* 193 Va. 513, 521, 69 S.E.2d 450, 455 (1952), where we said that "[t]he kind of benefit that takes the promise out of the statute is one which the promisor receives or expects to receive when he makes the promise, resulting in an original, independent undertaking by the promisor." Ford reasons that, at the time Schneider made his several promises, the defendants expected to receive and later did receive direct benefits from the use of the parts Ford sold to Morton.

Ford reads our comment in *Lawson* out of context with the facts and holding in that case. There, the promisor expected to receive, and ultimately did receive, a benefit induced by the promise. Yet, noting that "it was a benefit arising after the alleged promise, not one received at the time the promise was made", *id.* at 520, 69 S.E.2d at 455, we held that the promise was collateral rather than direct.

Whether an undertaking is collateral and governed by the statute of frauds or direct and exempt from the statute is not to be judged by the unilateral intent of the promisor but by the mutual understanding between the promisor and promisee.

> In ascertaining to whom credit was extended, the intention of the parties governs. This intention is to be ascertained from the words used by the parties and all of the circumstances surrounding the transaction. The real character of the promise does not depend altogether upon the words or form of expression used, but largely upon the situation of the parties and what they *mutually understood* from the language, whether they understood the transaction to be a direct or a collateral promise.

*Id.* at 518, 69 S.E.2d at 453 (citations omitted) (emphasis added).

Although the promisee in *Lawson* had sent an invoice to the promisor and the promisor had made payment, we held that the undertaking was collateral. Here, there was no allegation of such facts. To the contrary, Ford's allegation that it had sued Morton and obtained a judgment before it instituted this action tends to show that Ford understood that Schneider's promise was merely a collateral undertaking. "[I]f the original contractor . . . remains liable and the undertaking of the third party is merely that of surety or guarantor, the undertaking is collateral and within the statute of frauds." *Id.* at 517, 69 S.E.2d at 453. This rule applies even when the collateral promise was the principal inducement to performance by the promisee. *Mid-Atlantic Appliances v. Morgan,* 194 Va. 324, 328-29, 73 S.E.2d 385, 387-88 (1952).

Ford asks us to hold that, even if its contract claim was barred by the statute of frauds, the defendants are estopped to assert the statute as a defense. Ford relies upon *T . . . v. T . . .,* 216 Va. 867, 224 S.E.2d 148 (1976). There, a mother in a divorce case sought to enforce an oral promise, made by her former husband as an inducement to marriage, to support her unborn child which she had conceived by another man. The trial court ruled that the mother's claim was barred by the statute of frauds because the husband's promise was one "made upon consideration of marriage". Code § 11-2(5). On appeal, we held that "the husband's promises to the wife, in reliance upon which she changed her position, acted to her detriment, and substantially performed

her obligations . . . have estopped him from pleading the statute of frauds." *Id.* at 873, 224 S.E.2d at 152.

*T . . . v. T . . .* is not controlling here. Code § 11-2(5), involved in that case, addresses a bilateral agreement between a promisor and a promisee. Code § 11-2(4), in issue here, contemplates a debtor, a promisor, and a promisee-creditor. A Code § 11-2(5) promisor receives a direct benefit as the *quid pro quo* of his promise, and he is the promisee's sole obligor. A Code § 11-2(4) promisor receives no direct benefit and is liable only if the debtor defaults. We reaffirm our holding that one who makes an oral promise and is the sole obligor may be estopped from invoking the defense of the statute of frauds, even though the statute is otherwise applicable. But to hold that a promisee, upon proof of reliance and detriment, could enforce an oral undertaking by a promisor who derives no direct benefit from the transaction and is only conditionally obligated to perform would effectually repeal Code § 11-2(4). We decline to do so, and we hold that Ford's contract claim is barred by the statute of frauds.

 In the second count of its motion for judgment, Ford claimed damages "[a]s a direct and proximate consequence of defendants' actual fraud".

The sole function of the statute of frauds is to prevent enforcement of an oral contract or promise as defined in the statute. The statute does not foreclose relief in a cause in equity based upon misrepresentation, *see H-B Partnership* v. *Wimmer,* 220 Va. 176, 257 S.E.2d 770 (1979) (constructive trust imposed upon land acquired by real estate agent as a result of false representations), and it does not apply to a tort claim based upon actual fraud. Hence, the trial court erred in holding that Ford's fraud claim was barred by the statute of frauds.

The defendants argue, however, that the demurrer was correctly sustained, albeit for the wrong reason. Specifically, they contend that Ford "failed to allege facts sufficient to support a claim for fraud." We disagree.

Ford alleged that Schneider repeatedly represented to Ford that "he would pay . . . for all parts and automotive equipment supplied directly to Morton", that "Ford would 'not lose a penny' ", and that he "was going to get involved personally in the business of Morton". Ford further alleged that Schneider's representations were "false and fraudulent and known to be so when made", that they "were made with intent to induce . . . Ford to supply the

parts to Morton", and that Ford relied upon that inducement to its detriment.

The defendants claim that "the alleged promises related to the future, rather than to a present, existing fact" and that such representations are not sufficient to support an action for fraud. They rely upon *Soble* v. *Herman,* 175 Va. 489, 500, 9 S.E.2d 459, 464 (1940), where we said that "[t]he general rule is that fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events."

While failure to perform an antecedent promise may constitute breach of contract, the breach does not amount to fraud. But the promisor's intention — his state of mind — is a matter of fact. When he makes the promise, intending not to perform, his promise is a misrepresentation of *present* fact, and if made to induce the promisee to act to his detriment, is actionable as an actual fraud. *Lloyd* v. *Smith,* 150 Va. 132, 145-47, 142 S.E. 363, 365-66 (1928); *accord Sea-Land Service, Inc.* v. *O'Neal,* 224 Va. 343, 351, 297 S.E.2d 647, 651-52 (1982).

As we have noted, Ford expressly alleged that Schneider's promises were known to be false and fraudulent when made, that they were made with intent to induce Ford to supply the goods to Morton, and that Ford relied and acted upon those promises to its detriment.

We hold, therefore, that Ford stated a cause of action for actual fraud and that the ruling on the demurrer constituted reversible error. We will affirm the judgment dismissing the contract claim, reverse the judgment dismissing the fraud claim, and remand the case for a trial on the merits of the second count.

*Affirmed in part,*
*reversed in part,*
*and remanded.*