**Dieter LISSMANN, Plaintiff–Appellee,**

v.

**The HARTFORD FIRE INSURANCE COMPANY, Defendant–Appellant.**

No. 87–3140.

United States Court of Appeals, Fourth Circuit.

Argued April 6, 1988.

Decided May 27, 1988.

John P. Arness (Jamie M. Bennett, Michele S. Harrington, Hogan & Hartson, Washington, D.C., Frank B. Miller, III, S. Vernon Priddy, III, John B. Catlett, Jr., Sands, Anderson, Marks & Miller, Richmond, Va., on brief), for defendant-appellant.

Orran L. Brown, Sr. (Michael W. Smith, Christian, Barton, Epps, Brent & Chappell, Douglas W. Davis, Cheryl G. Ragsdale, Hunton & Williams, Richmond, Va., on brief), for plaintiff-appellee.

Before MURNAGHAN and CHAPMAN, Circuit Judges, and MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

MURNAGHAN, Circuit Judge:

The plaintiff, Dieter Lissmann, in 1981 purchased the Plantation House, which is located on the east side of the United States Courthouse annex in Richmond, Virginia. Lissmann sued the seller of the building and others asserting claims that the agreements related to the sale had been breached. Thereafter an internal wall of the Plantation House collapsed on November 11, 1983, whereupon Lissmann amended his suit to add a claim for damages attributable to the wall's collapse.

Lissmann additionally claimed for losses stemming from the wall collapse against the Hartford Fire Insurance Company which had insured his interest in the Plantation House property. One claim against the insurance company sought recovery for property damage. Another claim asserted a right to recovery for lost rents.

On April 5, 1984, attorneys for Lissmann met with Hartford's adjuster, Horace Brown, and Hartford's attorney, Thomas Hassell. It appears that the parties agreed to a settlement of the claims under which Lissmann's counsel agreed to a payment by Hartford of $32,500 for the property damage claim, which would actually be made after the pending suit against the individuals who had sold the property to him had been concluded. At that time, a subrogation formula would be worked out by which a portion of any recovery would be off-set against the $32,500 that had been agreed upon in settlement. There also was agreement that April 10, 1984 would be the cut-off date for the claim for lost rent, which, at the time, was being quantified by Hartford's insurance adjuster and Hartford's rental agents.

By January 1985 Lissmann's claims against the sellers and others involved in the sale and restoration had been settled and the attorney for Lissmann, Cheryl Ragsdale, wrote to Hassell on February 22, 1985 proposing a subrogation formula. Hassell did not reply. Ragsdale twice wrote to him in September 1985, finally eliciting a response from him by letter of October 3, 1985. Therein he questioned various elements of the subrogation formula that Ragsdale had proposed and Hassell ended up offering $20,000 in settlement of all claims. Ragsdale responded by letter dated October 9, 1985 indicating that Hassell was welcome to review all files concerning the calculation of the subrogation formula. Hassell delayed reply to that letter until December 23, 1985, when he advised Ragsdale that Hartford was denying the claim because the two year statute of limitations that applied had by that time run.

There was evidence that, following the April 5, 1984 meeting, Hartford adopted a plan to delay action on the claim hoping

thereby to lull Lissmann into inaction until the statute of limitations had run its course. One employee of Hartford by memorandum instructed Hassell to "let sleeping dogs lie." Hassell appeared to testify that he followed those instructions by purposely failing to respond to letters on behalf of Lissmann and by asking for more information in his October 3, 1985 letter.

Not surprisingly, Lissmann sued the Hartford claiming breach of the insurance contract by failing to pay his claims, and he asserted that Hartford breached a second, separate contract formed on April 5, 1984 by failing to pay, and that Hartford had breached the fiduciary duty of good faith by failing to pay. Lissmann also asserted common law fraud on the part of Hartford by representing that it would pay the claims when, in fact, it was merely delaying its rejection until the running of the statute of limitations had taken place.

Hartford entered a general denial of liability and affirmatively pleaded the statute of limitations against the insurance contract claims and failure of Lissmann to satisfy a condition precedent to payment in that he failed to file a proof of loss form. As to the defense of the statute of limitations and the defense of failure to submit a proof of loss form, Lissmann responded asserting equitable estoppel as to the statute of limitations defense and waiver of the proof of loss requirement.

Following a full trial on the merits, a special verdict was returned by the jury. It found that Lissmann was entitled to recover for his damage and rent claims under the insurance policy and that equitable estoppel operated to prevent Hartford from relying on the statute of limitations.[1] The jury further found breach by the Hartford of its contract to pay the claims when it negotiated the settlement agreement of April 5, 1984 and concluded that Hartford had exhibited a breach of its duty to perform its contractual obligations in good faith and that there had been

perpetration of fraud by Hartford. For the breaches of contract the jury awarded $54,284 in compensatory damages. Also, the jury in its verdict held that Lissmann was entitled to $1,000,000 in punitive damages.

The existence of sufficient evidence to sustain a compensatory award of $54,284 is hardly open to doubt. The action to induce inaction on the part of Lissmann beyond the crucial date for statute of limitations purposes was sufficiently made out in evidence introduced before the jury, and the compensatory damages award should be affirmed.

Whether, however, there was fraud supporting the punitive damages award is another question. Hartford was guilty of breach of two contracts, the original insurance contract and the settlement agreement of April 5, 1984. However, fraud, which requires proof by clear and convincing evidence that a representation of the defendant was false when made, was absent here. Lissmann, on whom the burden of proof fell, made no effort to establish that, when the agreements were made, Hartford had no intention of performing them. It was entirely possible and by no means improbable that the Hartford meant to abide by its promise when made and only later succumbed to cupidity and tried to beguile Lissmann into not protecting himself against the running of the statute of limitations.

Under Virginia law only if a breach of contract establishes the elements of an independent willful tort may it support an award of punitive damages. *A & E Supply Co. v. Nationwide Mutual Fire Insurance Co.*, 798 F.2d 669, 672 (4th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1302, 94 L.Ed.2d 158 (1987) (citing *Kamlar Corp. v. Haley*, 224 Va. 699, 705, 299 S.E.2d 514, 517 (1983)). An independent tort is one that is factually bound to the contractual breach but whose legal elements are distinct from it. *Id.* Fraud is a wilful tort. It is the knowing misrepresentation of a material fact to a person whose reasonable

---

1. Estoppel was also found to exist with respect to the proof of loss form because Hartford had been provided the necessary information and

contributed to Lissmann's failure formally to file.

reliance results in damage. *Winn v. Aleda Const. Co.*, 227 Va. 304, 315 S.E.2d 193 (1984).

■ The crucial issue in the appeal is whether plaintiff proved fraud under facts bound to the breach of contract. The sole foundation of the one million dollar punitive damage award would be the existence of fraud. While the jury specifically found that Hartford had failed in its duty to act in good faith, that breach cannot give rise to punitive damages. *A & E Supply Co.*, 798 F.2d at 676; *see State Farm v. Floyd*, 235 Va. 136, 366 S.E.2d 93 (1988).

The threshold inquiry with fraud looks to what representation was allegedly made. The relevant representation in the present case is defendant's statement on April 5, 1984 that it would pay plaintiff's claim. That statement, according to the district court, served triple duty in the present case: (1) it equitably estopped defendant from relying on a statute of limitations defense regarding a claim on the insurance contract, (2) it created a second contract, separate and apart from the insurance contract, and (3) it was a representation, the falsity of which gave rise to a fraud claim. The evidence supports the first and second uses to which the statement was put. The evidence does not clearly and convincingly support, as it must, the third use to which it was put.

The failure of the district court and the parties to focus on the three uses of the statement and differentiate them obscures the case. A Supreme Court of Virginia case, not cited by the parties or the district court, nicely sets the distinction between a statement actionable as a breach of contract and a statement actionable as a fraud. *Colonial Ford Truck Sales, Inc. v. Schneider*, 228 Va. 671, 325 S.E.2d 91 (1985). *Colonial Ford* distinguishes between a statement that is false when made and a promise that becomes false only when the promisor later fails to keep his word. The former is fraud, the latter is breach of contract. A promise to perform an act in the future is not, in a legal sense, a representation as that term is used in the fraud context. *Soble v. Herman*, 175 Va.

489, 9 S.E.2d 459 (1940). The reason is obvious. Without that rule almost every breach of contract could be claimed to be a fraud.

Thus, the critical inquiry in the present case is whether the defendant's statement on April 5, 1984 that it would pay plaintiff's claim was false when made. The plaintiff had the burden of showing by clear and convincing evidence that the statement was false. *Winn*, 227 Va. at 308, 315 S.E.2d at 195. He did not.

The jury's findings that the statement equitably estopped defendant from raising a limitations defense and that the statement created a contract are not pertinent to the fraud inquiry. Equitable estoppel is a device by which one, who by his statement induces detrimental reliance of another, will not be heard later to contradict the statement that induced the reliance. A person can be equitably estopped even when his earlier statement was not false. Fairness simply dictates that he should not be allowed to change his statement which has been detrimentally relied upon. The jury was properly instructed that it is not necessary that the plaintiff, in setting up an equitable estoppel, show fraud or deceit, but only show that he has been misled to his prejudice. Obviously, if fraud or deceit were also present, they, being more egregious, would incidentally also create an equitable estoppel. While fraud creates an equitable estoppel, however, the converse is not true. An equitable estoppel does not create fraud. An equitable estoppel was properly found by the jury but that does not establish the existence of a fraud. Fraud involves more culpable behavior that must be proved under a higher burden of proof.

■ Similarly, and more clearly, the fact that the statement was a promise and created a contract and that its later untruth was a breach does not mean that it was a fraud. The statement must have been false *when made.*

The evidence regarding the veracity *vel non* of the statement of defendant that it would pay the claim when the statement was made is as follows. The participants

of the meeting between the parties were Ragsdale and another lawyer representing Lissmann, and Hassell and Brown representing the Hartford. The meeting took place on April 5, 1984. The jury found that the Hartford agreed to pay Lissmann's claims. Yet, there is no evidence that the statement that the Hartford would pay was false when it was made on April 5, 1984. The evidence suggests that a decision to lull the plaintiff to sleep on his rights first came to life in May 1985. An interoffice memorandum of which Hassell received a copy, dated May 13, 1985, states in its final sentence "The statute of limitations runs on this case on November 11, 1985, and I would recommend we just let sleeping dogs lie and see if this one slips by." Hassell wrote the Hartford on May 30, 1985 and stated:

> It is my understanding based upon our telephone conversation of May 29, 1985 that I will withhold taking any action on the captioned case until such time as the insured's attorney institutes some further recovery effort.

> I will diary my file until mid November, 1985 and contact you at that time unless something occurs beforehand.

Hassell kept to that understanding. When Ragsdale wrote him on September 2, 1985, he did not answer the letter. Only when Ragsdale wrote again on September 23, 1985 did he answer by letter of October 3, 1985. That kind of dilatory conduct designed to lull Lissmann or his representative was sufficient for the jury equitably to estop the Hartford from raising successfully a statute of limitations defense. But it does not make the representation of April 5, 1984 fraudulent.

The evidence shows that defendant made a promise on April 5, 1984 to pay plaintiff's claims. Unless that statement was false when made it cannot support a fraud claim. Lissmann has not proved falsity at that time. Hartford later reneged on its word and was liable, for breaking a promise, under breach of contract principles. Failure to abide by a promise generates a contract claim not a tort claim, *Colonial Ford*, 228 Va. at 677, 325 S.E.2d at 94,

unless the statement was false when made, *i.e.*, unless Hartford did not intend to keep its promise when it made it.

■ Hartford also has argued that the district court's instructions regarding equitable estoppel and fraud were wrong inasmuch as the word "reasonable" was improperly omitted, since, Hartford asserts, reliance must be reasonable. As to equitable estoppel, first, Hartford waived the point. Its objection to the equitable estoppel charge was "it is not a correct statement of the law, and especially as amended by the Court at the request of plaintiff's attorney, and it is not applicable to this particular case." Fed.R.Civ.P. 51 governs objections to jury instructions and provides "no party may assign as error ... unless that party ... stat[es] distinctly the matter objected to and the grounds of the objection." The distinct objection is that the word "reasonable" was omitted, that objection is made here on appeal but was not made in the district court. Second, under Virginia law regarding equitable estoppel there is no requirement that reliance be reasonable. *Lataif v. Commercial Indus. Const. Inc.*, 223 Va. 59, 286 S.E.2d 159 (1982).

A similar objection by the Hartford with respect to the court's instructions regarding fraud fails for the same reasons, namely, waiver, since the court gave Hartford's proposed instruction. However that point need not detain us since the absence of proof of fraud rendered the instruction, right or wrong, irrelevant.

The judgment, therefore, is affirmed as to the judgment for Lissmann of $54,284 in compensatory damages and reversed, with instructions to enter judgment in favor of the Hartford, insofar as the punitive damages claim is concerned.

AFFIRMED IN PART AND REVERSED IN PART, WITH INSTRUCTIONS.