## CIRCUIT COURT OF LOUDOUN COUNTY

Elaine Pitt Warf

v.

James W. Fields

Case No. (Chancery) 14483

BY JUDGE JAMES H. CHAMBLIN

March 9, 1993

After argument on February 1, 1993, the Court took under advisement the Demurrer of James W. Fields to Count II of the First Amended Bill of Complaint. The other defensive pleadings that were argued the same day were ruled upon from the bench as embodied in the order entered herein on February 25, 1993.

For the reasons hereinafter set forth, the Demurrer is overruled.

The fraud alleged in the First Amended Bill of Complaint involves Fields's making a promise with the intent not to perform it at the time the promise was made. In such a cause of action for fraud, the plaintiff must allege and prove by clear and convincing evidence the following:

(1) a promise which is false and fraudulent, i.e. made with no intent to perform it;

(2) made with the intent to induce the promisee (plaintiff) to act to his detriment; and

(3) the promisee (plaintiff) relied on the promise to his detriment.

*Colonial Ford* v. *Schneider*, 228 Va. 671 (1985); *Sea-Land Service* v. *O'Neal*, 224 Va. 343 (1982).

On a demurrer all facts alleged expressly or impliedly or which may be fairly and justly inferred from facts so alleged are admitted as true. *Bowman* v. *State Bank*, 229 Va. 534 (1985).

With the foregoing legal principles in mind, the allegations of the First Amended Bill of Complaint must be examined to determine if facts are so alleged to support the elements of the cause of action for

fraud. I had hoped that the Virginia Supreme Court would have decided the appeal in *Chandler* v. *Esposito*, [24 Va. Cir. 143 (1991)] (Chancery No. 13083; a fraud case with pleadings issues similar to this case) in such a way as to be helpful herein, but unfortunately it did not. The Supreme Court merely opined that this Court should have allowed the complainants to amend their amended bill of complaint and remanded the case for further proceedings. *Esposito* v. *Chandler*, Record No. 920081, decided February 26, 1993.

The allegations of the First Amended Bill of Complaint clearly support the first two elements. Fields made a promise to reconvey — although there may be some inconsistent allegations as to whom he was to reconvey the properties — which was false when made. It was made with no intent to fulfill it. *See* paragraphs 14 and 15 of the First Amended Bill of Complaint. Although it might not be specifically alleged, it can be reasonably inferred that Fields made the promise with the intent to induce the petitioner, Elaine Pitt Warf, to act to her detriment, i.e. to do nothing to protect the property which she might have ultimately inherited from her mother. *See* paragraph 18 of the First Amended Bill of Complaint.

The final element of reliance poses some difficulty in light of Warf's retaining counsel "to formalize and confirm her understanding" (Paragraph 15 of the First Amended Bill of Complaint) and her doing nothing thereafter until her mother died almost eight years later because she heard "nothing further" after her attorney wrote a letter in October 1984 after the alleged misrepresentations were made to her (Paragraph 16 of the First Amended Bill of Complaint). Although the burden will be on Warf to prove by clear and convincing evidence that she relied on Fields's representation as opposed to her attorney in her decision to take no legal action until after her mother's death, the allegations do not support a finding that she did not rely on Fields's representations. It will be a decision for the trier of fact at trial. Warf has pleaded reliance on Fields's representations. The mere language of her attorney's letter of October 19, 1984, despite the allegation in Paragraph 15 of the First Amended Bill of Complaint that it was drafted four days later on October 23, 1984, does not negate the allegations of reliance on Fields's representations.

Let counsel for Warf prepare a decree overruling the demurrer to which Mr. Lanham may note his exception.

April 8, 1994

After hearing argument on March 14, 1994, the Court took under advisement the Motion to Dismiss and for Sanctions filed by the Defendant, James W. Fields. The Plaintiff, Elaine Pitt Warf, has also filed a Motion for Nonsuit, but no order pursuant thereto has been entered. For the reasons that follow, the Motion for Nonsuit is granted, the Motion to Dismiss is denied, and the Motion for Sanctions is granted to the extent hereinafter stated.

Warf's amended bill of complaint seeks three forms of relief from Fields. First, in Count I she seeks to remove Fields as administrator of the Estate of Mary Libeau Pitt Fields who died intestate on April 29, 1992. Warf is the sole child and heir at law of Mary Fields. Fields qualified before the Clerk of this Court as administrator because of his marriage to Mary Fields in October, 1982, in the State of Maryland. However, Warf alleges that the marriage is void because Mary Fields lacked legal capacity at the time of the marriage ceremony. Secondly, in Count II, Warf seeks damages from Fields for the tort of fraud. Warf alleges that after the purported marriage, certain real estate owned by Mary Fields was conveyed by her to herself and Fields as tenants by the entirety. Warf claims that Fields represented to her prior to her mother's death that he would reconvey the properties to Mary Fields; that he made this representation without an intent to do so; that he did not cause the properties to be reconveyed; that, as a result, at Mary Fields's death, the properties passed to Fields by survivorship and not to Warf as Mary Fields's sole heir at law, thereby causing damage to Warf.

In Count III, Warf seeks an order of this Court requiring Fields to reconvey the properties to the Estate of Mary Fields because she lacked the capacity to enter into the conveyances to herself and Fields as tenants by the entirety.

At the pretrial conference on December 13, 1993 (trial was scheduled to commence February 16, 1994), Warf's counsel demanded a jury trial on the fraud claim and an issue out of chancery on the other two counts. As correctly pointed out by Fields's counsel, Warf could only prevail on the fraud claim if Mary Fields had'been competent to reconvey the properties to herself (the properties were owned as tenants by the entirety; therefore, both she and Fields would have been required to sign the deed). Such an assertion, i.e., that Mary Fields was

4

competent, is inconsistent with the other two counts wherein Warf takes the position that her mother was incompetent.

At the pretrial conference, the Court saw no way that all three counts could be tried at the same time because of the inconsistent positions of Warf; she was required to notify the Court and Fields's counsel on or before January 3, 1994, whether she wished to go to trial on February 16, 1994, on Count II (the fraud claim) alone, or on the other two counts. Ward did not notify the Court or counsel of her election on or before January 3, 1994.

On January 5, 1994, counsel for Fields inquired of counsel for Warf as to which count or counts she would go to trial on in February. At that time, Warf's counsel indicated that they were contemplating a nonsuit. Thereafter, on January 5, 1994, counsel for Fields drafted the Motion to Dismiss and for Sanctions. Counsel for Warf faxed a copy of the Motion for Nonsuit to Fields's counsel at 4:57 p.m. on January 5, 1994. The Motion to Dismiss and for Sanctions was filed on January 6, 1994, at 9:17 a.m., and the Motion for Nonsuit was filed the same day at 1:21 p.m.

There is no counterclaim in this suit; therefore, Warf is entitled to a nonsuit as a matter of right under § 8.01–380. No sanctions under § 8.01–271.1 can be imposed for merely taking a nonsuit when a plaintiff has the right to do so. However, Fields asks for dismissal and sanctions based upon other actions by Warf and her counsel.

Dismissal of the plaintiff's claims is too drastic a remedy for her failure to comply with the pretrial order by January 3, 1994. If the case had gone forward, then the Court could have fashioned a remedy short of dismissal for the delay in notification by Warf.

Although this Court is not pleased with the plaintiff's failure to notify by January 3, 1994, and then moving for a nonsuit within three days thereafter, even if this were sanctionable, Fields has not shown how he was hurt by the three-day delay.

But Fields does not rely on the foregoing for sanctions but goes further to assert that the filing of the suit and the failure to appropriately respond and supplement discovery as to witnesses by Warf is sanctionable. These issues are addressed below.

*Expert Witnesses*

*Dr. Gholam R. Mehryar*

In May, 1993, this case was set for trial in February, 1994, with a discovery cut-off of December 1, 1993, and all expert witnesses to be designated by October 1, 1993. See order entered May 28, 1993.

On or about October 1, 1993, Warf designated Dr. Mehryar as an expert. In the October 12, 1993, letter of Ms. Brunner to Mr. Lanham and in Warf's Supplemental Responses to Fields's Interrogatories filed about October 22, 1993, it is stated that Dr. Mehryar, a neurologist, would testify based on a review of Mary Fields's medical records that she had Alzheimer's Disease by 1985.

Warf alleges that some time between the purported marriage in October, 1982, and October, 1984 (when Fields allegedly made the fraudulent representation to Warf), Mary Fields conveyed certain properties owned by her to her and Fields as tenants by the entirety. Warf also alleges that in 1985, 1986, and 1987, Mary Fields and Fields made three specific conveyances of such properties. Warf alleges that because of Alzheimer's Disease, Mary Fields lacked sufficient capacity to enter into a marriage in October, 1982, and to make the conveyances she made thereafter.

On November 24, 1993, Ms. Brunner received a fax from Dr. Mehryar which included a letter dated November 15, 1993, to Ms. Brunner from him in which he stated that "a few weeks ago" he had advised her by telephone that in "the eighties I do not see any concrete documentation of dementia." This is completely contrary to Warf's prior discovery responses and completely contrary to Warf's theory of lack of capacity due to Alzheimer's. Warf has never stated that Mary Fields's lack of capacity was caused by anything other than Alzheimer's Disease or dementia. Counsel for Warf did not thereafter supplement the discovery responses (see Rule 4:1(e)(2)) or make Fields's counsel aware of this contrary opinion of Dr. Mehryar. Warf's counsel might have been surprised by the November 15, 1993, letter and Mr. Lanham might have gotten a copy of it by a subpoena duces tecum for Dr. Mehryar's records, but that does not absolve Warf and her counsel from a duty to supplement prior discovery responses. They clearly knew that Dr. Mehryar's opinion as set forth in prior discovery was incorrect.

To compound matters further, Fields, at his expense, had to depose Dr. Mehryar which was done on December 8, 1993. In his deposition, Dr. Mehryar states that he may have told Ms. Brunner orally before November 15, 1993, that Mary Fields was demented in the mid-1980's, but that after he again reviewed her records, he should not have told Ms. Brunner what he did. He stated that his letter of November 15, 1993, is accurate.

This is not a simple case of an expert "back pedaling" as Warf's counsel argues. It is a case where Warf's counsel filed discovery responses that subsequently proved to be incorrect, but counsel failed to supplement as required by the Rules. It caused Fields to have to depose Dr. Mehryar when Warf's counsel knew before the deposition that Dr. Mehryar's opinion would not in any way be helpful to Warf's case. Such action is unprofessional and discourteous at the least, and sanctionable at the most. Although it might be argued that the actions of Warf and her counsel are not technically violations of § 8.01–271.1, they certainly are violations covered by Rule 4:12(d).

There being no evidence that any of the sanctionable actions were committed by Warf, the sanctions are imposed on her counsel, Ms. Brunner, and Mr. Coulter. The sanction is payment to Fields for his costs and attorney's fees in any way associated with the taking of the deposition of Dr. Mehryar.

### Dr. Jody E. Green

Dr. Green was designated as an expert by Warf in the same manner as Dr. Mehryar. The letter of October 12, 1993, and the Supplemental Response to Interrogatories filed on or about October 22, 1993, stated that Dr. Green, a neurologist and an expert in Alzheimer's Disease, would testify that Mary Fields had Alzheimer's by 1986.

Dr. Green in her deposition taken on December 8, 1993, at Fields's expense stated that in July, 1993, she did a written opinion that the documents were weak, that she felt that Mary Fields was demented at the end of her life, but that she could not determine when Mary Fields became demented. Dr. Green was equivocal but ultimately said she had not provided this written opinion to Ms. Brunner and had destroyed it. Thereafter, all of Dr. Green's opinions were verbal. Dr. Green specifically stated in her deposition that she had never expressed the opinion attributed to her in the discovery responses.

Warf never supplemented the discovery responses even after Dr. Green's revelations at her deposition. Dr. Green specifically stated at her deposition that she could not recall commenting that Mary Fields had Alzheimer's by 1986.

Dr. Green's opinion as revealed at her deposition, like the opinion of Dr. Mehryar, is not helpful to Warf's case.

Warf's counsel has presented nothing that would lead this Court to conclude that Dr. Green ever expressed an opinion that Mary Fields had Alzheimer's by 1986. Their argument that it can be *inferred* from Dr. Green's deposition testimony that Mary Fields had Alzheimer's by 1986 is not persuasive in light of Dr. Green's specific opinion that she could not determine when Mary Fields became demented.

The Court views the actions of Warf's counsel as to Dr. Green's opinion to be the same as to Dr. Mehryar's opinion. Accordingly, Ms. Brunner and Mr. Coulter are to pay to Fields as a sanction his costs and attorney's fees in any way associated with the taking of the depositions of Dr. Green.

### *Lucy Roderick and Andy Beaudway*

Fields propounded interrogatories to Warf asking her to identify all persons with knowledge of the allegations of paragraphs 3, 4 and 7 of the First Amended Bill of Complaint. These paragraphs concern allegations that Mary Fields was of unsound mind since before October, 1982, that she lacked sufficient capacity to enter into a marriage in October, 1982, and that the values of the properties conveyed are as alleged. In a supplemental response filed on or about November 29, 1993, Warf listed Lucy Roderick and Andy Beaudway as witnesses with knowledge of the allegations of the three aforesaid paragraphs.

Fields's counsel investigated and determined that neither person had any knowledge of such allegations. The written report of Warf's private investigator (Plaintiff's Exhibit 1) admitted at the hearing on March 14, 1994, completely fails to show that either person had any knowledge of the matters requested by Fields. Warf's counsel has offered no satisfactory explanation for listing them as such persons.

This Court concludes that Warf's counsel did not thoroughly investigate the knowledge of either person before filing their discovery response. It caused Fields to incur expenses needlessly.

There being no evidence that Warf was responsible for the discovery response, the sanction is levied on Ms. Brunner and Mr. Coulter in the

form of payment to Fields for all his costs and attorney's fees associated in any way with his counsel having to investigate the extent of the knowledge of Ms. Roderick and Mr. Beaudway.

### Warf's Knowledge of Her Mother's Marriage

There is ample evidence to support a finding that Warf knew as early as December, 1983, that her mother had married Fields. This can be found in the letter dated October 19, 1984, from Jerry L. Johnson, who then represented Warf, to William W. Nickels, incorporated in the First Amended Bill of Complaint, and the card offered in evidence postmarked December 18, 1983, from Warf and her family addressed to "Mr. and Mrs. James Fields." (Defendant's Exhibit 2.)

This suit and a companion suit (Chancery No. 14482) were not filed until July, 1992, approximately 9½ years after Warf became aware of the marriage and almost 8 years after the alleged fraud. Although a finding cannot be made that Warf would never have prevailed in this suit because of her prior knowledge and the delay in filing the suits, it does tend to show a marginal good faith belief in the causes of action alleged. All considered, there is no reason or ground to impose any sanction on this issue.

### Ruling

Let Fields's counsel submit to the Court an affidavit of the costs and attorney's fees associated with the depositions of Dr. Mehryar and Dr. Green and the investigation of the knowledge of Ms. Roderick and Mr. Beaudway. Upon receipt thereof, the Court will prepare and enter an order consistent herewith.