PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

T.G. SLATER & SON, INCORPORATED,
           *Plaintiff-Appellant,*

v.

THE DONALD P. AND PATRICIA A.
BRENNAN LLC,
           *Defendant-Appellee.*

No. 03-1761

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-03-509-A)

Argued: May 6, 2004

Decided: September 30, 2004

Before WIDENER, LUTTIG, and TRAXLER, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Widener wrote
the opinion, in which Judge Luttig and Judge Traxler concurred.

---

## COUNSEL

**ARGUED:** Michael Randolph Shebelskie, HUNTON & WILLIAMS,
Richmond, Virginia, for Appellant. David John Fudala, Fairfax, Vir-
ginia, for Appellee. **ON BRIEF:** Peter H. White, Paul D. Flynn,
HUNTON & WILLIAMS, McLean, Virginia, for Appellant. Daniel
M. O'Connell, Jr., O'CONNELL & MAYHUGH, P.C., Warrenton,
Virginia, for Appellee.

**OPINION**

WIDENER, Circuit Judge:

Plaintiff T.G. Slater & Son, Inc. (Slater & Son) brought this action against defendant The Donald P. and Patricia A. Brennan LLC (Brennan LLC) in the United States District Court for the Eastern District of Virginia, alleging breach of contract, fraud, tortious interference, and related claims. Slater & Son, a licensed real estate broker, alleges that Brennan LLC owes Slater & Son a commission or like compensation for its services in a real estate transaction. Brennan LLC moved to dismiss the complaint and the district court granted the motion. For the reasons that follow, we vacate the judgment of the district court and remand the case for further consideration in light of this opinion.

I.

In its Amended Complaint, Slater & Son alleges the following facts, which we accept as true for purposes of reviewing a dismissal under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). T. G. Slater & Son, Inc. is a real estate agency that operates in Loudoun and Fauquier counties. Robert Slater, the owner of Slater & Son, is a licensed real estate agent.

Maureen Brennan owns and lives on property next to Slater's land. Miss Brennan raises horses on her property, known as Foxmount.

The Donald P. and Patricia A. Brennan LLC, the defendant, is a Delaware limited liability company whose principal is Maureen Brennan's father. Maureen Brennan's mother may also be a member of Brennan LLC.

Rachel Lambert Mellon is the former owner of a large tract of land near both Slater's land and Miss Brennan's Foxmount farm. Slater leased a portion of this property (the Mellon property) with his cousin until early 2002.

On October 18, 2001, Maureen Brennan called Robert Slater. There is no evidence that Miss Brennan and Slater were acquaint-

ances before this call took place. Miss Brennan asked Slater if he would rent out to her a portion of his land adjoining Miss Brennan's Foxmount farm so she could use the extra space for her horses. Slater told Miss Brennan that he was not interested in renting out his farmland. Slater also told Miss Brennan that he was a real estate broker, that he was leasing as a tenant adjoining land on the Mellon property, and that he believed the Mellon property was about to go on the market. Slater offered to show the land to Miss Brennan in his capacity as agent for Slater & Son, Inc.

On October 19, 2001, Miss Brennan called Slater and retained him to work on purchasing the Mellon property. Several days later, Slater met Miss Brennan and her mother, Patricia Brennan, at his office at T.G. Slater & Son, Inc. and took them to inspect the land. Slater spent around one and a half hours showing Miss Brennan and her mother the property and providing them with details including the location of springs on the property. Slater and the Brennans returned to Slater's office, and Miss Brennan asked Slater to provide comparable sales data and a tax plat showing the locations of other properties relative to the Mellon land. Miss Brennan told Slater she wanted the information because her father, Donald Brennan, wanted to review it.

On October 25, 2001, Slater faxed to Miss Brennan the information she requested. The fax was on letterhead that stated: "T.G. Slater & Son, Inc., REAL ESTATE AGENCY." Slater also obtained and furnished to Miss Brennan and her family copies of soil and topographic maps, aerial photographs of the land, and copies of the deed, deed restrictions, and covenants on the property.

The following day, Miss Brennan asked Slater if he would show her another piece of property adjoining the Mellon property because, she explained, her boyfriend was interested in purchasing that property as well. After examining that property Miss Brennan told Slater her boyfriend would not be interested.

About a week later, Miss Brennan contacted Slater and arranged for Slater to show her the Mellon property again, this time with both her mother and father. When the group returned to Slater's office at Slater & Son, they discussed making an offer to purchase the property. Slater told Miss Brennan that the custom in Virginia was for the

buyer's real estate agent to prepare the contract which is then reviewed by the buyer's attorney.

At this point the Mellon property was still not listed for sale, but Slater knew that a real estate agent, Babette Scully, was working for Miss Mellon to finalize a listing. Slater contacted Miss Scully several times to inquire about the status of the listing. On November 9, 2001, the Mellon Property was formally listed for sale on the Multiple Listing Service. Miss Scully was identified as the listing agent. Around the same time, Slater spoke with Miss Scully and was told that Miss Mellon had identified the Brennans as an exclusion to the listing agreement, meaning that if any of the Brennans purchased the property, Miss Scully would not receive her commission.

Slater then began trying to contact Miss Brennan but Miss Brennan never returned any of his calls. Slater also faxed the listing to Miss Brennan with a letter seeking to arrange a meeting. Shortly after these events, Slater received a call from an attorney representing Miss Brennan. The attorney told Slater that Miss Brennan was unavailable to talk with Slater and that the attorney was now representing her in "these matters."

On January 15, 2002, the farm manager of the Mellon Property hand delivered to Slater a letter informing him that the Mellon Property had been sold. Slater received the letter because, at the time, he and his cousin were still leasing part of the Mellon property. The letter required Slater to remove his equipment and vacate the property within 60 days. The farm manager told Slater the property had been sold to the Brennans. Slater later learned that the Mellon Property had been bought for $3.8 million by The Donald P. and Patricia A. Brennan LLC, a company in which Miss Brennan's father is the sole known principal, although Miss Brennan's mother may also be a member. Slater did not receive a commission or other compensation for his work in assisting Miss Brennan and her family with the purchase of the property.

On April 16, 2003, Slater & Son, Inc. filed a complaint against Brennan LLC in U.S. District Court for the Eastern District of Virginia. The complaint alleged six counts: breach of contract, fraud,

implied breach of contract, tortious interference, common law conspiracy, and statutory conspiracy.

Brennan LLC moved to dismiss the complaint under 12(b)(1), alleging that the citizenship of Brennan LLC's members was not alleged. Slater & Son amended its complaint to allege the citizenship of Brennan LLC's members. Brennan LLC also filed a motion to dismiss under 12(b)(6).

The district court granted Brennan LLC's motion to dismiss from the bench, giving its opinion orally at a hearing on the motion. The district court stated that the complaint did not allege that the parties ever discussed a specific rate of commission and that the contract would need to be in writing to comply with the statute of frauds. The court also stated that there was no allegation in the complaint of any misrepresentations, and that without evidence of a contract there could be no tortious interference claim. It concluded that: "I am going to grant this motion to dismiss, because I find that as this complaint is written, it has failed to state any cause of action against this defendant," and entered its final order.

## II.

We review *de novo* the dismissal of a complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). A Rule 12(b)(6) motion to dismiss "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In considering the motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs.*, 7 F.3d at 1134. The district court granted Brennan LLC's motion to dismiss on each of the five claims raised in the complaint—breach of contract, implied contract, fraud, tortious interference, and statutory and common law conspiracy. We address the district court's ruling on each of these claims in turn.

A.   Breach of Contract

The district court stated three grounds on which it relied in dismissing Slater & Son's breach of contract claim: (1) that the contract cannot be enforced because of the statute of frauds; (2) that the contract's terms were too indefinite to enforce; and (3) that the alleged contract was between the Brennans as individuals and not the Brennan LLC. For the reasons that follow, we reverse.

The district court found that there was no writing in the case and dismissed the breach of contract claim for failing to satisfy the statute of frauds. The district court correctly noted that the Amended Complaint does not allege the existence of a written contract signed by the party to be charged. However, dismissal under 12(b)(6) is appropriate only if the plaintiff can prove no set of facts that would support its claim. *Mylan Labs.*, 7 F.3d at 1134. Under Virginia law, there are several ways in which a contract that does not satisfy the statute of frauds may be enforced. Because Slater & Son's has alleged facts that would allow it to enforce the contract, even in the absence of a written agreement, the district court erred in relying on the statute of frauds to support dismissal under Rule 12(b)(6).

In *T . . . v. T . . .*, 224 S.E.2d 148, 151 (Va. 1976), the Virginia Supreme Court held that "under certain conditions, where there has been part performance, a court of equity will avoid the statute [of frauds] and enforce an oral agreement." *T . . . v. T . . .*, 224 S.E.2d at 151. The two "conditions" required under *T . . . v. T . . .* are (1) that the oral agreement is "certain and definite," and (2) that the part performance is so extensive that refusal to honor the oral agreement "would operate as fraud upon the party." *T . . . v. T . . .*, 224 S.E.2d at 151. Slater & Son's complaint alleges both the existence of a definite agreement and that Slater & Son performed a number of valuable services for which it received no compensation. It also alleges that the Brennan LLC sought to avoid paying the commission by deliberately misleading Slater & Son. Viewing these allegations in the light most favorable to Slater & Son, the Amended Complaint states a claim for breach of contract on which relief could be granted, even in the absence of a writing.

Moreover, the Amended Complaint alleges that several written documents were sent to Miss Brennan memorializing the contract.

Under Virginia law, a document acknowledging an oral contract can be used to satisfy the statute of frauds if the document is signed by the party to be charged. *Drake v. Livesay*, 341 S.E.2d 186, 188-89 (Va. 1986). After discovery, Slater & Son may be able to produce a document signed by a member or agent of Brennan LLC, and thus sufficient to satisfy the statute of frauds. Therefore, Slater & Son has pleaded a claim upon which relief can be granted, and dismissal under Rule 12(b)(6) was not appropriate.

In addition to relying on the statute of frauds, the district court held that the contract could not be enforced because the terms of the alleged contract were too indefinite to allow a "meeting of the minds." The district court based its holding on the failure of the Amended Complaint to allege "whether there was a commission that was quoted to the Brennans, whether the Brennans had given oral consent to pay the commission, [and] whether they understood that they were engaging brokerage services."

We do not agree that the alleged contract is too indefinite to enforce. The complaint alleges that "Ms. Brennan made an express oral contract with Slater & Son, through its agent Mr. Slater, that it would be paid a customary real estate commission for its services." This allegation, taken as true, is sufficient to support a claim for breach of contract under Virginia law. Where a contract is silent or ambiguous as to the commission to be paid for services, "certain custom or usage of the business and of the locality, known to the parties," or so generally and notoriously known that it is presumed to be known, is admissible to establish the rate the parties agreed to under the contract. *Hansbrough v. Neal*, 27 S.E. 593 (Va. 1897); see *Westmoreland-LG&E Partners v. Virginia Electric & Power Co.*, 486 S.E.2d 289, 293 (Va. 1997). Any determination of the precise custom or trade usage and whether the Brennan LLC had knowledge of that custom, or is presumed to have knowledge of the same, is a factual issue not appropriate for resolution in this motion to dismiss. The Amended Complaint alleges that the parties agreed that Slater & Son "would be paid a customary real estate commission for its services." Because trade usage and custom may be used to determine the appropriate rate of commission, this allegation is sufficiently definite to support a claim for breach of contract.

Finally, the district court dismissed the breach of contract claim because it found that the claim did not state a cause of action against Brennan LLC, but only against the three Brennans as individuals. We do not agree. In the Amended Complaint, Slater & Son specifically alleges that "Ms. Brennan acted as the agent of the Brennan LLC in entering this oral contract, thereby binding her principal to the terms of the agreement." The fact that Brennan LLC may not have been legally formed until after Slater & Son and Miss Brennan allegedly entered into their agreement does not alter our conclusion. Virginia law allows an agent or promoter of a business entity to bind the entity to contracts even before that entity is formed. *Branning Mfg. Co. V. Norfolk-Southern R. Co.*, 121 S.E. 74, 81 (Va. 1924); see *Strause v. Richmond Woodworking Co.*, 65 S.E. 659, 661 (Va. 1909). Thus Slater & Son's complaint, which alleges that Miss Brennan acted on behalf of Brennan LLC to secure the contract, is sufficient to state a claim for breach of contract against Brennan LLC.

For the reasons stated, we find that the district court erred when it dismissed Slater & Son's breach of contract claim under Rule 12(b)(6). At this point in the proceedings, taking the allegations in the Amended Complaint as true, Slater & Son has stated a claim for breach of contract. Further consideration of the statute of frauds, the terms of the alleged contract, and the proper parties to the contract must wait until the parties have had an opportunity to develop the facts. Accordingly, we vacate the district court's dismissal of Slater & Son's claim.

B.   Implied Contract

In addition to bringing a breach of contract claim, Slater & Son brought a claim on implied contract. The district court granted Brennan LLC's motion to dismiss this claim, but did not discuss its reasons for doing so. Again, we vacate the decision of the district court.

Virginia courts have long recognized an action for "contract implied in law" or *quantum meruit* by "requiring one who accepts and receives the services of another to make reasonable compensation for those services." *Po River Water & Sewer Co. v. Indian Acres Club of Thornburg, Inc.*, 495 S.E.2d 478, 482 (Va. 1998). To state a claim for implied contract, the plaintiff must allege "that (i) he rendered valu-

able services, (ii) to the defendant, (iii) which were requested and accepted by the defendant, (iv) under such circumstances as reasonably notified the defendant that the claimant, in performing the work, expected to be paid by the defendant." *Raymond, Colestar, Glapsy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 491 (4th Cir. 1992).

Slater & Son has pleaded each of these elements. The complaint alleges that Slater & Son performed a number of valuable services for Brennan LLC, that those services were requested by Brennan LLC, and that Brennan LLC "indicated to Mr. Slater that Slater & Son would be paid a commission on the purchase of any real estate resulting from his services." (Amended Comp. ¶ 48)

However, Brennan LLC argues that an implied contract claim cannot be brought to recover for brokerage services in real estate transactions because allowing the claim would thwart the statute of frauds. In support of this argument, Brennan LLC cites cases from California, New Jersey, and Texas. No Virginia court has followed this reasoning, however, and the Supreme Court of Virginia has repeatedly held in other circumstances that an implied contract action may be brought even if the underlying contract did not comply with the statute of frauds. *Cochran v. Bise*, 90 S.E.2d 178, 182 (Va. 1955); *Ricks v. Sumler*, 19 S.E.2d 889, 891-892 (Va. 1942). Moreover, at least one Virginia Circuit Court has addressed a very similar, even if not the same, issue, albeit in dicta, and suggested that "the statute of frauds has no application to an action on implied contract" for payment of commission on a real estate transaction. *All Pro Realty Assoc., Inc., v. Travilian Homes, Inc.*, 41 Va. Cir. 366 (1997).

Thus, while we are aware that some other jurisdictions may prohibit recovery on implied contract for real estate brokerage services, we are not convinced that Virginia courts would adopt a similar blanket rule. Virginia law regarding implied contracts evinces an intent to prevent a party to such an unenforceable contract from receiving the benefits of the other party's performance without providing reasonable compensation for those benefits in return. See *Cochran v. Bise*, 90 S.E.2d 178, 182 (Va. 1955). Slater & Son alleges in the Amended Complaint that it performed a number of valuable services for the Brennan LLC including inspecting the Mellon property, obtaining copies of soil and topographic maps and aerial photographs, and

researching the deed and deed restrictions on the property. Thus, the complaint, which we must take as true at this stage in the proceedings, alleges that Slater & Son performed valuable services for the Brennan LLC with the expectation that it would be paid. Under Virginia law, Slater & Son may bring an action on implied contract to recover the reasonable value of those services. Therefore, we hold that Slater & Son pleaded a claim for implied contract on the facts alleged in the complaint and the district court erred in dismissing the claim.

C.   Fraud

As with the implied contract claim, the district court did not state its reasons for dismissing Slater & Son's fraud claim. We vacate the order.

A claim of fraud may be brought in Virginia based on a defendant's alleged misrepresentation of intent to perform. In *Colonial Ford Truck Sales, Inc. v. Schneider*, 325 S.E.2d 91, 94 (Va. 1985), the Supreme Court of Virginia identified the elements of this claim: "When [the defendant] makes the promise, intending not to perform, his promise is a misrepresentation of *present* fact, and if made to induce the promisee to act to his detriment, is actionable as an actual fraud." *Schneider*, 325 S.E.2d at 94 (emphasis in original). The court then held that the elements required for such a claim are: (1) the defendant made a promise knowing it was false, (2) with the intent to induce the promisee to perform, and (3) the promisee acts on the promise to his detriment.

Slater & Son's complaint alleges that "[t]he Brennan LLC's agents intentionally and knowingly represented the Brennan LLC's present intent to compensate Slater & Son for Mr. Slater's services, with the intent to mislead Slater & Son." Amended Comp. ¶ 41. "In reliance on these misrepresentations by the Brennan LLC's agents, Slater & Son invested significant amounts of time and effort to aid the Brennans." Amended Comp. ¶ 42. Taking the allegations in the complaint as true, we find that Slater & Son has properly alleged a claim of fraud. Accordingly, the district court erred in dismissing Slater & Son's fraud claim.

D.    Tortious Interference

The district court dismissed Slater & Son's tortious interference claim, stating only that "there has not been an allegation of any kind of a contract with which there could be tortious interference." We disagree.

Virginia recognizes the claim of tortious interference with a contract. "The elements required for a prima facie showing of the tort are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985).

In its Amended Complaint, Slater & Son alleges (1) the existence of a "valid contractual relationship" between Slater & Son and Patricia Brennan, (2) that Brennan LLC "was aware of the existence of the contractual relationship," (3) that the Brennan LLC "intentionally interfered" with that relationship "for the purpose of avoiding the payment of Slater & Son's reasonable commission." and (4) that as a result of the interference "Slater & Son suffered a loss in the form of lost commissions." Amended Comp. ¶ 54-57. Thus, Slater & Son pleaded each of the elements of a claim of tortious interference.

The district court, however, dismissed the claim because it found Slater & Son had not alleged the existence of a contract. For the reasons set out in discussing the breach of contract claim, we find that Slater & Son has alleged the existence of a valid contract. Moreover, under Virginia law, the existence of a contract is not a prerequisite to a claim of tortious interference. The interference may be to a "contract expectancy," meaning a contract that was expected to come into force in the future. *Maximum, Inc. v. Lockheed Management Information Systems Co.*, 493 S.E.2d 375, 378 (Va. 1997). Slater & Son's allegations of a "contractual relationship" supported by specific factual assertions meets the pleading requirements of a contract expectancy.

Thus, viewing the allegations in the light most favorable to the plaintiff, we hold that Slater & Son properly pleaded a cause of action

for tortious interference. Accordingly, the district court erred in dismissing Slater & Son's tortious interference claim for failure to state a claim on which relief could be granted.

E.   Conspiracy

The district court also dismissed Slater & Son's statutory and common law conspiracy claims without providing its reasons for doing so. We are of opinion that the district court also erred in dismissing these claims.

A claim for statutory civil conspiracy under Virginia law must allege (1) two or more persons combined, associated, agreed, or mutually undertook together to (2) willfully and maliciously injure another in his reputation, trade, business, or profession. Va. Code Ann. §§ 18.2-499, 500; *Michigan Mut. Ins. Co. v. Smoot*, 128 F.Supp.2d 917, 924-25 (E.D. Va. 2000). Likewise, "[a] common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 453 S.E.2d 261, 267 (Va. 1995).

The Amended Complaint alleges that "the Brennan LLC, Ms. Brennan, the sellers of the Slater Land, or others combined to terminate and interfere with the contractual relationship between Ms. Brennan and Slater & Son." Amended Comp. ¶ 62 Specifically, the complaint alleges that the parties to the conspiracy acted together to complete the sale of the farm without paying Slater & Son a commission for the work it performed. The Amended Complaint further alleges that this conduct was "intentional, purposeful and without lawful justification" and resulted in "substantial monetary damages to Slater & Son." Amended Comp. ¶ 62-63.

Viewing the complaint in the light most favorable to the plaintiff, we hold that Slater & Son has properly pleaded a claim for both statutory conspiracy and common law conspiracy. Accordingly, the district court erred by dismissing Slater & Son's common law and statutory conspiracy claims for failure to state a claim on which relief can be granted.

## III.

Accordingly, the judgment of the district court is vacated and the case remanded to the district court for proceedings not inconsistent with this opinion.

*VACATED AND REMANDED WITH INSTRUCTIONS\**

*The complaint in this case was filed April 18, 2003, and a motion to dismiss on the grounds of Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6 (failure to state a cause of action) was filed May 12, 2003. An amended complaint was filed May 21, 2003, and a motion to dismiss under Fed. R. Civ. P. 12(b)(6) (failure to state a cause of action) was filed May 23, 2003. No action was taken on the first motion to dismiss. The second motion to dismiss was argued, however, May 30, 2003, and no reference in that argument was made to jurisdiction. The order dismissing the case was entered by the district court that same day, May 30, 2003, the order stating: "Defendant's motion to dismiss is denied as moot, and Defendant's motion to dismiss amended complaint is granted. Accordingly, it is hereby ordered that Plaintiff's complaint is dismissed."

The order of May 30, 2003 ordinarily might well mean that the first motion to dismiss was denied as moot, and the second motion to dismiss was granted. That is corroborated by the entry in the docket of May 30, 2003, stating that the order of May 30, 2003 denied "as moot motion by Donald & Patricia to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)." The order appealed from is treated by both parties as an order dismissing the case for failure to state a cause of action, and we so treat the same.