769 F.2d 975
 Adolph Benjamin SOKOLOWSKI; Rosemarie Sokolowski; Adolph
Benjamin Sokolowski, father, next friend, and natural
guardian of Laura Sokolowski, a minor; Adolph Benjamin
Sokolowski, father, next friend, and natural guardian of
Anthony Sokolowski, a minor; and Adolph Benjamin Sokolowski
and Rosemarie Sokolowski, jointly as husband and wife, Appellees,
v.
Joseph FLANZER, Esquire, Executor of the Estate of Josephine
D. Gagnon, Appellant,
and
James I. Taliaferro, Jr.; and Smithfield Packing Company,
Defendants.
Adolph Benjamin SOKOLOWSKI; Rosemarie Sokolowski; Adolph
Benjamin Sokolowski, father, next friend, and natural
guardian of Laura Sokolowski, father, and next friend, and
natural guardian of Anthony Sokolowski, a minor; and
Adolph Benjamin Sokolowski and Rosemarie Sokolowski, jointly
as husband and wife, Appellants,
v.
Joseph FLANZER, Esquire, Executor of the Estate of Josephine
D. Gagnon; James I. Taliaferro, Jr.; and
Smithfield Packing Company, Appellees.
 Nos. 84-1579(L), 84-1603.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 3, 1985.
Decided Aug. 7, 1985.
 
 Jerome E. Michaelson, Baltimore, Md., for appellant.
 Lawrence E. Engel, Sally Samuel, Baltimore, Md. (Whiteford, Taylor, Preston, Trimble & Johnson, Baltimore, Md., on brief) for appellee.
 Before PHILLIPS, SPROUSE, and ERVIN, Circuit Judges.
 SPROUSE, Circuit Judge:
 
 
 1
 Adolph Benjamin Sokolowski and his wife, Rosemarie Sokolowski, brought this diversity action against James I. Taliaferro, Smithfield Packing Company, and Joseph Flanzer, the executor of the estate of Josephine Gagnon, for injuries suffered when the Sokolowskis' automobile collided with a car driven by Josephine Gagnon, who was killed in the accident.
 
 
 2
 On July 7, 1980, James Taliaferro, a truck driver employed by Smithfield Packing Company, was driving southbound on Interstate 95 in New Castle County, Delaware, in a company tractor trailer. The Smithfield vehicle collided with a southbound automobile driven by Josephine Gagnon, a Delaware resident. Gagnon's car then traveled across the median strip and collided with a northbound vehicle driven by Adolph Sokolowski. Sokolowski, his wife Rosemarie, and his son Anthony, all Maryland residents, were injured in the accident. Josephine Gagnon was pronounced dead at the scene. Although the accident occurred in Delaware, the action was brought and tried before a federal jury in Maryland.
 
 
 3
 Joseph Flanzer, a Delaware resident, was appointed executor of the estate of Josephine Gagnon on November 24, 1980. The Sokolowskis filed suit in the Maryland federal district court on September 17, 1982, alleging negligence on the part of Taliaferro, Smithfield Packing Company, and Gagnon. After presentation of the plaintiffs' evidence, the trial judge directed a verdict for Taliaferro and Smithfield Packing Company. The jury returned a verdict for the Sokolowskis against executor Flanzer and awarded them a total of $140,000. The trial judge, for reasons that will appear later, reduced the award to $50,000 to conform to the limit of Gagnon's automobile liability insurance. The Sokolowskis appeal the directed verdict in favor of Taliaferro and Smithfield Packing Company. Flanzer appeals the district court's denial of his pretrial motion for judgment on the pleadings or for summary judgment, arguing that the Sokolowskis' action against the Gagnon estate was time barred. We affirm.
 
 I. The Evidence and the Directed Verdict
 
 4
 Viola Collas testified that she was a passenger in an automobile operated by her husband, Raymond, which was traveling northbound on Interstate 95 in front of the Sokolowskis' vehicle. She observed the car driven by Josephine Gagnon from about one-half mile away approaching at a high rate of speed and weaving in and out of traffic. She then saw the Gagnon car veer to the right side of a tractor trailer where she lost sight of it momentarily. Immediately afterwards, she saw the car reappear in front of the tractor trailer, cross the median and strike the Sokolowskis' vehicle. Mrs. Collas said that she did not see the tractor trailer change lanes.
 
 
 5
 Taliaferro testified that he was driving southbound in a tractor trailer owned by Smithfield Packing Company and was in the far right hand lane. Approximately one half mile north of the accident scene, an entrance ramp merged into the main highway from the right--in effect creating another lane--and Taliaferro was thus traveling in the center lane. Taliaferro checked his right side mirror and saw a flat bed truck about to pass him on the right. Soon after the flatbed truck passed his tractor trailer, Taliaferro felt a bump on the right front portion of his tractor. He looked down from his cab and observed the top of Gagnon's car in front of his tractor with the front portion of the car facing to his left. Taliaferro braked but pushed the Gagnon car a short distance before the car veered off to his left and crossed the median strip. He said he never saw the Gagnon vehicle prior to the collision. Raymond Collas testified that he stopped after the accident and that Taliaferro told him that the Gagnon car had struck his tractor trailer.
 
 
 6
 The Sokolowskis contend that the trial judge erred in directing a verdict for Taliaferro and Smithfield because there existed evidence from which the jury could have inferred that Taliaferro caused the collision with Gagnon's vehicle by attempting to steer his truck into the far right lane. The Sokolowskis argue first that Taliaferro testified that he normally drove in the right lane, and this coupled with the presence of paint from Gagnon's car on the tractor's right front hub, is sufficient to support an inference that Taliaferro's tractor trailer struck the Gagnon automobile. Second, they maintain that the evidence of paint on the right side of the tractor trailer and damage to the left side of the tractor is inconsistent with Taliaferro's testimony that he felt only one impact and that this contradiction is sufficient to raise a jury question. Third, they urge that it is inappropriate to direct a verdict on the basis of testimony offered by an interested witness.
 
 
 7
 Reviewing the evidence in the light most favorable to the Sokolowskis, Tights, Inc. v. Acme McCrary Corp., 541 F.2d 1047, 1055-56 (4th Cir.1976); Shelton v. Jones, 356 F.2d 426, 428 (4th Cir.1966), we conclude that the district court was amply justified in directing the verdict. The unrefuted testimony of Mrs. Collas establishes that Taliaferro did not change lanes and that Gagnon was driving erratically. The asserted contradictions in Taliaferro's testimony are in fact consistent. While the initial impact involved the right side of his tractor trailer, the damage to the left side apparently occurred as a result of the Gagnon vehicle coming into contact with the tractor as it veered across the southbound lane onto the median. A jury question cannot be constructed solely from inferences built on speculation and conjecture. See Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir.1982); Ford Motor Co. v. McDavid, 259 F.2d 261, 266 (4th Cir.1958).
 
 II. Statute of Limitations
 
 8
 Flanzer, on behalf of the Gagnon estate, appeals from the district court's denial of his pretrial motion for judgment on the pleadings or for summary judgment based on his contention that the suit was barred by Delaware's two-year statute of limitations. The district court held that Maryland's three-year statute of limitations governed. As previously stated, the accident occurred in Delaware on July 7, 1980 and the Sokolowskis filed their suit in Maryland on September 17, 1982. Under the Maryland statute of limitations, the suit was timely; but if the two-year Delaware provision were to control, it would have been fatally late. To determine which state's limitation period applies, we first examine controlling principles of conflict of laws. We start with the basic rule that in diversity cases a federal district court must apply the conflict of laws rules of the forum state--here, Maryland. Klaxon v. Stentor Electrical Manufacturing Co., 313 U.S. 487, 494, 496, 61 S.Ct. 1020, 1020, 1021, 85 L.Ed. 1477 (1941).A.
 
 
 9
 In tort actions, Maryland adheres to the traditional substantive-procedural conflict of laws dichotomy whereby the law of the state where the tort occurred governs substantive matters while the law of the forum state governs procedural concerns. See, e.g., President and Directors of Georgetown College v. Madden, 505 F.Supp. 557, 569 (D.Md.1980); Billingsley v. Lincoln National Bank, 271 Md. 683, 685 n. 1, 320 A.2d 34 (1974); White v. King, 244 Md. 348, 354-55, 223 A.2d 763 (1966). In determining whether a law is substantive or procedural, the federal district court accepts the characterization placed on the involved rule by the state court. Madden, 505 F.Supp. at 571. At first blush, the resolution of this issue appears simple because under Maryland law statutes of limitations are generally considered procedural. Doughty v. Prettyman, 219 Md. 83, 148 A.2d 438 (1959). Maryland courts, however, have recognized an exception to this maxim which complicates our inquiry. In instances where a foreign statute of limitations extinguishes the underlying right and not merely the remedy, the foreign statute of limitations is considered substantive and must be applied by the forum court. Madden, 505 F.Supp. at 571; Slate v. Zitomer, 275 Md. 534, 341 A.2d 789 (1975), cert. denied sub nom. Gasperich v. Church, 423 U.S. 1076, 96 S.Ct. 862, 47 L.Ed.2d 87 (1976).
 
 
 10
 The leading case recognizing this exception involving a statute creating a new liability and simultaneously limiting the time within which the concomitant right can be enforced is The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). There the Supreme Court was confronted with an in rem admiralty proceeding involving the death of a seaman based on a wrongful death statute which contained a twelve-month limitation period. In holding this time period to be substantive, the Court stated:
 
 
 11
 The statutes create a new legal liability, with the right to a suit for its enforcement, provided the suit is brought within twelve months and not otherwise. The time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone. It is a condition attached to the right to sue at all.
 
 
 12
 Id. at 214, 7 S.Ct. at 147. See also Kalmich v. Bruno, 553 F.2d 549, 553 (7th Cir.1977); Ramsay v. Boeing Company, 432 F.2d 592 (5th Cir.1970); Ford, Bacon & Davis, Inc. v. Volentine, 64 F.2d 800 (5th Cir.1933); Fieldman v. Roper Corp., 586 F.Supp. 936, 938 (S.D.Miss.1984); Cummings v. Cowan, 390 F.Supp. 1251, 1255 (N.D.Miss.1975).
 
 
 13
 The Harrisburg exception was augmented in Davis v. Mills, 194 U.S. 451, 24 S.Ct. 692, 48 L.Ed. 1067 (1904), where the Supreme Court held that even in the absence of a Harrisburg "built in" statute of limitations, a limitation period nonetheless may be considered substantive even if it is contained in a different statute so long as it is specifically directed to the statutorily-created liability:
 
 
 14
 [T]he fact that the limitation is contained in the same section or the same statute is material only as bearing on construction. It is merely a ground for saying that the limitation goes to the right created and accompanies the obligation everywhere. The same conclusion would be reached if the limitation was in a different statute, provided it was directed to the newly created liability so specifically as to warrant saying that it qualified the right.
 
 
 15
 Id. at 454, 24 S.Ct. at 694. As a necessary foundation for the application of these labyrinthine conflicts rules, we now examine the Delaware non-claim statute, Del.Code Ann. tit. 12 Sec. 2102 (1979), and the Delaware statute of limitations applicable to personal injury actions, Del.Code Ann. tit. 10 Sec. 8119 (1979), which Flanzer argues controls this suit.
 
 
 16
 Section 2102(a), pertaining to claims against an estate that arose before the death of the decedent,[1] apparently provides only a six-month period for bringing suit against an estate:
 
 
 17
 (a) All claims against a decedent's estate which arose before the death of the decedent, including claims of the State and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort or other legal basis, if the Register of Wills observes the requirements of Sec. 2101 of this title, are barred against the estate, if not barred earlier by other statute of limitations, the personal representative and the heirs and devisees of the decedent, unless within 6 months from the date of granting of letters to the executor or administrator notice is given in compliance with Sec. 2104 of this title or unless notice is presumed under Sec. 2103 of this title.
 
 
 18
 Del.Code Ann. tit. 12 Sec. 2102(a) (1979). Section 2102(f), however, pertains to suits where, as in this case, recovery is limited to insurance proceeds, and furnishes an exception to the conditions provided in subsection (a):
 
 
 19
 (f) Nothing in this section affects or prevents, to the limits of the insurance protection only, any proceeding to establish liability of the decedent or the personal representative for which he is protected by liability insurance.
 
 
 20
 Del.Code Ann. tit. 12 Sec. 2102(f) (1979). Generally, Delaware provides a two-year statute of limitations for personal injury actions in section 8119 which provides:
 
 
 21
 No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained.
 
 
 22
 Del.Code Ann. tit. 10 Sec. 8119 (1979).
 
 B.
 
 23
 Flanzer concedes that section 2102(f) contains no "built-in" statute of limitations as found in The Harrisburg. He urges, however, that we employ the Davis v. Mills test and conclude that a suit brought pursuant to section 2102(f) is governed by the Delaware two-year limitations period imposed by section 8119. In other words, he argues that although the statutory "right" is created by section 2102(f), section 8119's two-year limitation period is directed specifically to section 2102(f) and qualifies that statutorily-created right.
 
 
 24
 The flaw in Flanzer's argument is that the limitation period contained in section 8119 simply is not "directed to the newly created liability so specifically as to warrant saying that it qualifie[s] the right" created by section 2102(f). Section 8119 is limited to personal injuries. Section 2102(f), however, encompasses any "liability of the decedent or the personal representative for which he is protected by liability insurance." Consequently, a suit brought pursuant to section 2102(f) would be vulnerable to a limitations attack based on any number of Delaware Code provisions. This absence of specificity distinguishes this action from cases applying the Davis v. Mills test. See, e.g., Bournias v. Atlantic Maritime Co., 220 F.2d 152 (2d Cir.1955); Cummings v. Cowan, 390 F.Supp. 1251, 1255 (N.D.Miss.1975); Blue v. Maico, 217 F.Supp. 747 (D.Ga.1963); see generally Annot., 95 A.L.R.2d 1162, 1177-82 (1964); but see Maki v. George R. Cooke Co., 124 F.2d 663 (6th Cir.), cert. denied, 316 U.S. 686, 62 S.Ct. 1274, 86 L.Ed. 1758 (1942).
 
 
 25
 Flanzer, however, relies on Kalmich v. Bruno, 553 F.2d 549 (7th Cir.), cert. denied, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977), for the proposition that the necessary specificity may be implied from separate enactments. We find Kalmich distinguishable. In Kalmich, the former owner of a business in Yugoslavia which had been confiscated by the Germans during World War II brought suit in Illinois against an individual who had bought the business from the Germans at a bargain price and resold it, presumably at a profit. The court was confronted with four Yugoslavian statutes: (1) Article 125 making the confiscation of another's belongings during World War II for non-military purposes a criminal offense; (2) Article 134(a) providing a perpetual period for prosecuting a violation of Article 125; (3) Section 1 providing a civil action for those whose belongings were confiscated by the German occupation forces; and (4) Section 20 stating that the statute of limitations for criminal actions would serve as the statute of limitations for civil actions if the conduct complained of in the civil action could subject the defendant to criminal prosecution. Reasoning that the statutes were not sufficiently precise to warrant application of the Yugoslavian statute of limitations, the district court ruled that the claim was barred under the Illinois limitations period. In reversing, the Seventh Circuit held that Section 20 and Article 134(a), when read together, demonstrated sufficient specificity to satisfy the Davis v. Mills test--under Section 20 only conduct constituting war crimes as identified in Article 134(a) was subject to the Yugoslavian perpetual limitation period for bringing civil actions. 553 F.2d at 555.
 
 
 26
 The specificity apparent in the Yugoslavian statutory scheme implicated in Kalmich is absent in this case. While the Yugoslavian statutes were limited in application to specific activities, i.e., war crimes, Delaware Code section 2102(f) is limitless in scope, referring only to "liability."
 
 
 27
 Further, importing the Delaware general statute of limitations period would be contrary to the rationale underlying the Davis v. Mills test--that the forum court, by recognizing and enforcing a statutory right created by a sister state, should give effect to the full intent of the foreign legislature when such intent is evidenced by a statute of limitations directed specifically at the statutorily created right. See Brunswick Terminal Co. v. National Bank, 99 F. 635 (4th Cir.), cert. denied, 178 U.S. 611, 20 S.Ct. 1029, 44 L.Ed. 1215 (1900).
 
 
 28
 A plain reading of section 2102(f) indicates that the Delaware legislature intended to impose no procedural conditions on the pursuit of an action under that section. The section simply states that "[n]othing in this section affects or prevents, to the limits of the insurance protection only, any proceeding to establish liability of the decedent or of the personal representative for which he is protected by liability insurance" (emphasis supplied). Had the legislature intended to allow this type of suit only within Delaware's limitations period, it could have so indicated by appropriate language. To give effect to Delaware's general statute of limitations, in the absence of clear legislative intent, would eviscerate the conflict of laws principles employed by Maryland courts.
 
 
 29
 Finally, Flanzer argues that Maryland decisions interpreting the insurance exception to Maryland's non-claim statute indicate that that exception is substantive and thus the similarly-worded Delaware statute, section 2102(f), also should be so construed. See Blocher v. Harlow, 268 Md. 571, 303 A.2d 395 (1972); Dixon v. Checchia, 249 Md. 20, 238 A.2d 247 (1968). The issue presented in both Blocher and Dixon was whether the insurance exception to the Maryland non-claim statute, Code Md.Ann. art. 93, Sec. 112, as amended (1957),[2] would be given retroactive effect to incidents occurring prior to its effective date. In both cases the court held that, absent a clear expression of legislative intent to give the statute retroactive application, the insurance exception would be applied only prospectively. While there is language in both opinions indicating that the limitation period contained in the Maryland statute was a part of a substantive right, Blocher, 268 Md. at 581, 303 A.2d 395; Dixon, 249 Md. at 24, 238 A.2d 247, we find significant differences in the structure of the two enactments.
 
 
 30
 It is true that the Maryland and Delaware statutes are designed to achieve the same results--i.e. to create an insurance exception to the six-month limitation on suing an estate. They were, however, the products of the legislative bodies of two different states and, for the purposes of our inquiry, are structured differently. The section of the Maryland law creating the insurance exception specifically provides that to be viable on actions where insurance is involved, suit still must be brought within the statute of limitations generally applicable to the underlying action.[3] We agree with the Maryland court that this scheme indicates a legislative intent that the statute of limitations is part of the substantive right created by Maryland law. The Delaware legislature, on the other hand, structured its statute differently. The prohibition against suing an estate after six months is contained in section 2102(a). The insurance exception is contained in section 2102(f) and states nothing about a statute of limitations for any action against an estate involving insurance coverage. One need look to section 8119--a completely different part of the Delaware Code not even mentioned in section 2102(f)--for the time limitations on such actions. This structure simply does not fit the Davis or Harrisburg exceptions to the general rule that statutes of limitation are usually procedural; therefore, the Delaware law is interpreted by looking to the general rule.
 
 
 31
 In reaching this decision, we are mindful that "[i]n determining state law in diversity cases where there is no clear precedent, courts of appeal are disposed to accord substantial deference to the opinion of a federal district judge because of his familiarity with the state law which must be applied." Caspary v. Louisiana Land and Exploration Co., 707 F.2d 785, 788 n. 5 (4th Cir.1983). This deferential standard also extends to a district court's conclusions gleaned from its interpretation of a state's conflict of laws principles. See O'Rourke v. Eastern Air Lines, Inc., 730 F.2d 842, 847 (2nd Cir.1984); Saloomey v. Jeppeson & Co., 707 F.2d 671, 676 (2nd Cir.1983); Riske v. Truck Insurance Exchange, 541 F.2d 768, 771 (8th Cir.1976). Here the district court thoughtfully analyzed the applicable principles and concluded that under Maryland conflict rules the Delaware statute of limitations must be considered procedural and, accordingly, that the Maryland statute of limitations applied to the Sokolowskis' action.
 
 
 32
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The parties agree that Gagnon died after the collision with the Sokolowskis' vehicle
 
 
 [2]
 The insurance exception now appears at Md.Est. & Trusts Code Ann. Sec. 8-104(e) (1977)
 
 
 [3]
 Section 8-104(e) provides:
 (e) Where insurance exists.--If the decedent was covered by a liability insurance policy which at the time the action is instituted provides insurance coverage for the occurrence, then, notwithstanding the other provisions of this section, an action against the estate may be instituted after the expiration of the time designated in this section, but within the period of limitations generally applicable to such actions. (emphasis supplied).