Plaintiff.

v.

**AFFILIATED COMPUTER SERVICES, INC.** Defendant.

No. CIV.A.3:02CV544.

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 19, 2002.

James S. Crockett, Jr., Bradfute Warwick Davenport, Jr., Troutman Sanders, LLP, Richmond, VA, for Plaintiff.

Charles Michael Sims, Charles Garrison Meyer, III, LeClair Ryan PC, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

SPENCER, District Judge.

This matter comes before the Court on Defendant's Motion to Dismiss Count II of the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the Motion is DENIED.

### I

Kimberly Godlewski is suing Affiliated Computer Services, Inc. ("ACS") for breach of contract and for fraud in the inducement stemming from representations ACS allegedly made to Ms. Godlewski in recruiting her to be an employee. Ms. Godlewski is a resident of Henrico County, Virginia and brings this claim against ACS, a Delaware Corporation with its principal place of business in Dallas, Texas, under diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Ms. Godlewski alleges that in December, 2000, Alex Baker, the vice president of ACS, recruited her to leave her extremely lucrative position as a top sales representative with Servicesoft Corporation to join the sales staff of ACS. Ms. Godlewski alleges that Mr. Baker fraudulently induced her to join ACS by promising her a salary and commission package totaling over $400,000 (more than a 30% increase from her Servicesoft compensation). On December 20, 2000, Ms. Godlewski signed a letter agreement to join ACS. Count I of Ms. Godlewski's Complaint alleges that ACS breached its employment contract by failing to pay her the promised salary and commissions. Count II alleges that ACS never had any intention of honoring its promises, and therefore, fraudulently induced her to leave her employment with Servicesoft and join ACS. Defendant ACS filed this Motion to Dismiss arguing that any redress Ms. Godlewski may have against ACS lies in breach of contract, not in the tort of fraudulent inducement.

### II.

To succeed on a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), ACS must show that, when all factual allegations in the complaint are treated as true, the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must confine itself to the allegations in the pleadings in making this determination. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The factual allegations in the complaint are accepted as true and the plaintiff is given the benefit of any reasonable inference that can be drawn from the allegations. *Mylan Labs. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993).

In *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.,* 256 Va. 553, 507 S.E.2d 344 (1998), the Virginia Supreme Court held that to determine "whether a cause of action sounds in contract or tort, the source of duty violated must be ascertained." The Court explained that:

> [i]f the cause of complaint be for an act or omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort.

*Richmond Metro.,* 507 S.E.2d at 347. The Supreme Court explained that if the relationship between the parties creates a duty irrespective of the contract, and not solely by virtue of the contract, and that duty is breached, then the action sounds in tort. It is certainly possible for a party to "show both a breach of contract and a tortious breach of duty." *Id.* According to ACS, Ms. Godlewski has not alleged that ACS breached any duty to her that arose independent of the employment contract between her and ACS. ACS argues that the only alleged breach concerns promises made by ACS in the employment contract to pay Ms. Godlewski certain compensation. Therefore, this alleged breach of a purely contractual duty cannot give rise to a claim of fraudulent inducement.

Although ACS correctly cites *Richmond Metro* as controlling precedent in this case, no fair reading of *Richmond Metro* or its progeny supports ACS' position. In *Richmond Metro,* the Plaintiff, RMA, sued Mr. McDevitt on the grounds that he did not

fulfill his contractual duties under his Design–Build contract with RMA to construct "The Diamond" in Richmond, Virginia. McDevitt allegedly submitted applications for payment containing misrepresentations as to compliance with the design specifications. *Richmond Metro.*, 507 S.E.2d at 345–46. Crucial to the Court's holding was its finding that there was no evidence to suggest "that McDevitt did not intend to fulfill its contractual duties at the time it entered into the Design–Build Contract with RMA." *Richmond Metro.*, 507 S.E.2d at 348. Therefore, *Richmond Metro* was not a case of fraud in the inducement. *Id.*

Rather than precluding a fraudulent inducement claim in the context of contractual relationships, *Richmond Metro* emphatically preserves such claims. In *Richmond Metro,* the Supreme Court expressly affirmed its prior opinion in *Colonial Ford Truck Sales v. Schneider,* 228 Va. 671, 325 S.E.2d 91 (1985) and the Fourth Circuit's opinion in *Flip Mortgage Corp. v. McElhone,* 841 F.2d 531 (4th Cir.1988), which both held that a promisor who makes a promise, intending not to perform, makes a misrepresentation of fact that is actionable as fraud. *Richmond* Metro at 348 (citing *Colonial Ford,* at 677, 325 S.E.2d at 94). The only proper distinction between *Richmond Metro* and *Colonial Ford* is that the facts in *Richmond Metro* did not support a claim of fraud in the inducement, where as, the facts in *Colonial Ford* did support such a claim. The applicable law in both cases is identical.

The Fourth Circuit agrees with this Court's reading of *Richmond Metro.* In *Hitachi Credit Am. Corp. v. Signet Bank,* 166 F.3d 614 (Fourth Cir.1999), the Fourth Circuit held that the Virginia Supreme Court's decision in *Richmond Metro* did not preclude a claim of fraud in the inducement. According to the Fourth Circuit, *Richmond Metro* properly preserved the traditional distinction in Virginia law between "a statement that is false when made (which is fraud) and a statement that becomes false only when the promisor later fails to keep his word (which is a breach of contract)." *Hitachi,* 166 F.3d at 631 n. 9 (citing *Colonial Ford,* 325 S.E.2d at 94). In *Hitachi,* the Fourth Circuit went on

to allow Hitachi's claim for fraudulent inducement where Signet allegedly made misrepresentations to induce Hitachi to sign certain agreements. *Id.*

ACS argues that the Fourth Circuit in *Hitachi* misinterpreted *Richmond Metro* and that the Virginia Supreme Court set the record straight in *Yuzefovsky v. St. John's Wood Apartments,* 261 Va. 97, 540 S.E.2d 134 (2001). In *Yuzefovsky,* a tenant of St. John's Woods Apartments was held up and shot in the apartment complex. Prior to signing a lease agreement, Yuzefovsky asked the landlord whether the area was safe and if any crimes were committed on the property in recent history. The landlord told Yuzefovsky that no crimes had occurred there and that police vehicles patrolled the premises. Both statements were completely false. *Yuzefovsky,* 540 S.E.2d at 137. The Court cited *Richmond Metro* for the proposition that the source of the duty which was allegedly breached determines whether a claims sounds in contract or tort. *Yuzefovsky,* 540 S.E.2d at 142 (citing *Richmond Metro.,* 507 S.E.2d at 347). The Court quickly held that "[i]t is clear that the duty to refrain from making these statements relates to the contract Yuzefovsky was induced to sign, and not from a common law duty." *Yuzefovsky,* 540 S.E.2d at 142. The Court also found that there was not a sufficient causal connection between the fraudulent statements and the subsequent robbery to support a claim for damages. *Id.* ACS' Motion to Dismiss is based on the proposition that *Richmond Metro* and *Yuzefovsky* reverse the longstanding precedent in Virginia that:

[a] fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. While failure to perform an antecedent contract may constitute breach of contract, the breach does not amount to fraud. But the promisor's intention, his state of mind, is a matter of fact. When he makes the promise, intending not to perform, his promise is a misrepresentation of fact, and if made to induce the promisee to act to his detriment, is actionable as an actual fraud.

*Colonial Ford,* 325 S.E.2d at 94 (1985). It is difficult to believe that the Virginia Supreme Court in *Yuzefovsky* overruled *Colonial Ford* in as vague and inexplicable a manner as the Defendant suggests. The Defendant argues that *Yuzefovsky* clarifies the Court's earlier holding in *Richmond Metro.* In fact, *Yuzefovsky* cites *Richmond Metro* approvingly, 540 S.E.2d at 142 (citing *Richmond Metro.,* 507 S.E.2d at 347), and *Richmond Metro* cites *Colonial Ford* approvingly, 507 S.E.2d at 560 (citing *Colonial Ford,* 325 S.E.2d at 94). Therefore, the chain is unbroken from *Colonial Ford* through *Yuzefovsky* and the distinction the Court made in *Colonial Ford* between breached contractual promises and true fraud in the inducement claims remains the law in Virginia. Nowhere in *Yuzefovsky* does the Court alter the analytical framework set forth in *Colonial Ford.* Rather, the Court merely holds that the duty breached arose from contract law, not tort law. *Yuzefovsky,* 540 S.E.2d at 142.

In her Complaint, Ms. Godlewski alleges that ACS never intended to honor the promises it made to her in luring her away from Servicesoft and to enter into the employment contract with ACS. She also alleges that she reasonably relied on ACS' false inducements in leaving her employment with Servicesoft, and that she suffered damages by relying on the false inducements. Therefore, Ms. Godlewski's Complaint affirmatively alleges all of the elements of a claim for fraud in the inducement and she can prove a set of facts that, if believed, would entitle her to relief.

## III.

Ms. Godlewski's claim of fraudulent inducement survives the crucial distinction between promises which later go unfulfilled and supposed promises which the maker never intended to honor. Therefore, the Motion to Dismiss Count II of the Complaint is DENIED.