**INSTEEL INDUSTRIES, INC., Plaintiff,**

v.

**COSTANZA CONTRACTING CO., INC. and Richard Costanza, Defendants.**

No. CIV.A. 3:03CV345.

United States District Court, E.D. Virginia, Richmond Division.

July 31, 2003.

Richard T. Rice, Esquire, Douglas W. Hanna Esquire, Womble Carlyle Sandridge & Rice, PLLC, Winston–Salem, NC, William M. Holm, Esquire, Womble Carlyle Sandridge & Rice, PLLC, Vienna, for Plaintiff.

Stephen M. Colangelo, Esquire, Morrison & Foerster, LLP, McLean, for Defendants.

## MEMORANDUM OPINION

PAYNE, District Judge.

This matter is before the Court on the Defendants' Motion To Dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), the Second and Third Claims for Relief. For the reasons set forth below, the motion is denied.

## BACKGROUND

On August 19, 1999, Insteel Industries, Inc. ("Insteel") sustained significant damage to its factory building in Fredericks-

burg, Virginia and subsequently made a claim against its insurer, Factor Mutual Insurance Co. ("Factory Mutual"), for the repair costs. On April 27, 2001, Factory Mutual[1] filed a complaint against Insteel, *Factory Mutual Ins. Co. v. Insteel Indus., Inc.*, No. 3:01–CV–275, seeking a declaration of insurance policy rights and liabilities arising from the incident that caused the structural damage to the Insteel factory. On September 26, 2001, that action was transferred to the Middle District of North Carolina on Insteel's motion.

During discovery in the Factory Mutual action, Factory Mutual issued a subpoena to Costanza Contracting Company ("Costanza Contracting"), which had performed a contract to repair the damaged Insteel facility. Costanza Contracting eventually produced the subpoenaed documents pursuant to a protective order. During a mediation proceeding in December 2001, Factory Mutual claimed that Costanza Contracting's documents contained numerous examples of improper and fraudulent billing practices and, as a result, refused to reimburse Insteel for a substantial portion of the payments Insteel made to Costanza Contracting. Subsequently, Insteel and Factory Mutual settled their dispute after Insteel greatly reduced its settlement demand in light of Factory Mutual's allegations respecting Costanza Contracting's billing practices.

On April 16, 2003, Insteel filed the Complaint in this action against the Defendants, Costanza Contracting and Richard Costanza. Richard Costanza is named personally because Costanza Contracting allegedly involuntarily forfeited its Maryland corporate status during the time it was performing the Insteel repair contract. The Complaint alleges that the Defendants engaged in certain improper billing practices as they performed the repair contract and seeks relief on three theories:

(1) breach of contract; (2) fraud; and, (3) unfair and deceptive trade practices under North Carolina General Statutes § 75–1.1.

Pursuant to Rule 12(b)(6), the Defendants now move to dismiss the Second (fraud) and Third (violation of the North Carolina unfair trade practices statute) Claims for Relief. A court should not dismiss a complaint under Rule 12(b)(6) unless it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Labram v. Havel,* 43 F.3d 918, 920 (4th Cir.1995). A court reviewing a motion to dismiss must accept the complaint's factual allegations as true and view the allegations in a light most favorable to the nonmoving party. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *GE Inv. Private Placement Partners II v. Parker,* 247 F.3d 543, 548 (4th Cir.2001).

As a general rule, in the context of a motion to dismiss under Rule 12(b)(6), the court may not consider matters outside the pleadings without converting the motion to dismiss into a motion for summary judgment. *Gay v. Wall,* 761 F.2d 175, 178 (4th Cir.1985). The court may, however, consider dispositive documents that are either attached to, or referenced in, the complaint. *Moore v. Flagstar Bank,* 6 F.Supp.2d 496 (E.D.Va.1997) (citing 5A Charles A. Wright and Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)). Here, the Court considers both the allegations in the Complaint and the document attached to the Complaint as Exhibit A.

## STATEMENT OF FACTS

On August 19, 1999, a forklift accident caused severe damage to Insteel's facility

---

**1.** Factory Mutual is not a party to the pending action.

in Fredericksburg, Virginia. (Compl. ¶ 6). Insteel is a North Carolina corporation with its principal place of business in North Carolina. (Compl. ¶ 1). Insteel solicited Costanza Contracting, a Maryland corporation, to repair the damaged facility. (Compl. ¶¶ 2,9). On August 20, 1999, the parties executed a three-page contract—the "Published Price List/Customer Agreement" attached to the Complaint as Exhibit A (the "Costanza Contract").

The Costanza Contract provides very little direction as to the manner in which the Defendants were to carry out the construction project. Instead, the Costanza Contract sets forth the prices for a number items instrumental in the construction, including: (1) regular, overtime and premium overtime labor; (2) travel, including rates for mileage, travel time and *per diem* charges; and, (3) rental rates and other charges for materials, tools and equipment. (Compl. ¶¶ 15–17, 31, 39; Costanza Contract p. 1). The only contractual provision that imposes any duty on the contracting parties to undertake any specific affirmative act is in the "TERMS AND CONDITIONS" section, which provides, in relevant part, that:

> Weekly invoices (for work completed Wednesday thru Tuesday) will be mailed, faxed, or delivered at the job site every Wednesday (or on the day after the last day of work prior to Wednesday). Invoices will be paid in full every Friday, at the job site, before quitting time (or before quitting time on the third working day after the last day of work). The Customer shall be liable for eighteen percent (18%) per annum interest on, and all reasonable legal costs incurred collecting past due invoices.

(Costanza Contract p. 2).

Unbeknownst to Insteel, Costanza Contracting involuntarily forfeited its Maryland corporate status on October 7, 1999, but the Defendants nevertheless performed repair work at the Insteel facility from August of 1999 until February of 2001. During that period, the Defendants failed to deliver weekly invoices in a timely manner as the Costanza Contract's "TERMS AND CONDITIONS" require. (Compl. ¶ 20).

When the Defendants did deliver the invoices, they submitted the documents either to Insteel's representative in Mount Airy, North Carolina or via hand delivery at Insteel's facility in Fredericksburg, Virginia. (Compl. ¶ 21; Answer ¶ 23). Either way, the invoices were forwarded to Insteel's consultant, Thurman Watts of John S. Clark Company, who routinely reviewed the invoices before submitting them for payment to Insteel at its headquarters in Mount Airy. (Compl. ¶¶ 23, 24). It is unclear whether Insteel or the Defendants forwarded those invoices to Watts, but Insteel paid the invoices in full by preparing a check for each invoice in Mount Airy. (Compl. ¶ 25).

Each invoice contained, among other things, specific charges for labor hours, mileage and materials. (Compl. ¶ 22). In all, Insteel received and paid invoices totaling $3,541,488.21. (Compl. ¶ 27). During the Factory Mutual litigation, however, it became apparent that these invoices contained a number of allegedly intentional misrepresentations, including improper billings for: (1) hours not actually worked and inflated overtime and premium overtime hours; (2) unreasonable charges for various administrative tasks; (3) travel time, mileage and *per diem* charges not incurred; (4) unreasonable, inflated and unconscionable rental rates, over the life of the contract, for material, tools and equipment; and, (5) daily rental rates for certain standard equipment and commonly used materials. (Compl. ¶¶ 27–43). The

Defendants also received a cash refund from a supplier on materials that were charged to the contract at the rate of cost plus 30%, but they did not forward that cash refund to Insteel. (Compl.¶ 44).

## LEGAL DISCUSSION

In light of the facts above, Insteel filed the Complaint, which asserts three claims for relief. The First Claim for Relief ("First Claim"), which is not challenged, alleges that the Defendants breached the terms of the construction contract by: (1) overbilling Insteel for labor, travel and materials; and, (2) failing to forward to Insteel a cash refund that the Defendants received for certain materials that were charged to the contract. (Compl.¶¶ 55–56, 58).

The Second Claim for Relief ("Second Claim") alleges that the Defendants committed fraud when they made intentional misrepresentations in the invoices that they submitted to obtain payments pursuant to the Costanza Contract. The Complaint alleges that the Defendants intentionally misrepresented: (1) the total, overtime and premium overtime hours worked; (2) travel expenses; and (3) rental rates for certain materials used during the project. (Compl.¶¶ 60–64). The Second Claim also incorporates by reference all the allegations in the First Claim. The Complaint further alleges that the Defendants intended that Insteel rely on the invoices and that Insteel did in fact rely on each invoice, to its detriment, when it paid the full amount of each invoice from its headquarters in Mount Airy. The Third Claim for Relief ("Third Claim") alleges that the Defendants, through the same conduct alleged in the First and Second Claims, violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen.Stat. § 75–1.1 (the "Act"). (Compl.¶ 75).

In their motion to dismiss, the Defendants assert that Virginia law is applicable to Insteel's fraud claim and that, under Virginia law, Insteel cannot assert both a breach of contract claim and a fraud claim under the facts alleged in the Complaint. The Defendants also assert that the North Carolina Unfair and Deceptive Trade Practices Act is inapplicable in this action because: (1) North Carolina does not have a sufficient interest in this action for its law to apply, and (2) the Act imposes tort liability while this action is an ordinary contract dispute. The starting point in addressing all of these contentions is a choice of law analysis.

## I. Applicable Law

■ This is a diversity action between a North Carolina plaintiff and a Maryland defendant respecting actions taken in Virginia, Maryland and North Carolina. It is axiomatic that, when sitting in diversity jurisdiction, federal courts must apply state substantive law as announced by the state's highest court. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under the rule in *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), a federal court sitting in Virginia and exercising diversity jurisdiction applies Virginia's choice of law rules. Thus, given that the parties and facts in this action are associated with multiple jurisdictions, it is first necessary to apply the Virginia choice of law rules to determine the substantive law against which the Court will measure the allegations that give rise to the Second and Third Claims.

## A. Nature of the Allegations

Because the Virginia choice of law rules depend on the character of the claim for relief, the Court must first determine whether the problem is actually one of tort

or contract. *In re Putman,* 110 B.R. 783, 794 & n. 25 (Bankr.E.D.Va.1990); *Buchanan v. Doe,* 246 Va. 67, 71, 431 S.E.2d 289 (1993). Although Insteel has labeled the Second Claim as a charge of "fraud" and the Third Claim asserts a North Carolina statute that imposes tort liability, a court must apply the law of the forum to determine the character of an action for conflicts of law purposes. *See e.g., Sokolowski v. Flanzer,* 769 F.2d 975, 978 (4th Cir.1985) ("In determining whether a law is substantive or procedural, the federal district court accepts the characterization placed on the involved rule by the state court."); *Forsyth v. Cessna Aircraft Co.,* 520 F.2d 608, 611 (9th Cir.1975) ("the characterization of an action must be made in accordance with the law of the forum."); *Fahs v. Martin,* 224 F.2d 387, 396–97 (5th Cir. 1955) ("in deciding how [a] matter should be characterized for conflict of laws purposes, it is clear that the law of the forum should control."); *Willard v. Aetna Casualty & Surety Co.,* 213 Va. 481, 483, 193 S.E.2d 776, 778 (1973) ("The court of the forum state determines according to its own conflict of laws rules whether a question of law is substantive or procedural."); *Buchanan,* 246 Va. at 71, 431 S.E.2d. 289 ("The forum state applies its own law to ascertain whether the issue is one of tort or contract."); Restatement (Second) of Conflicts of Laws § 124 (1969) (providing that "the local law of the forum determines such questions as whether . . . . the action shall be in tort or contract . . . ."). The same factual allegations form the basis for the Second and Third Claims, thus the following choice of law analysis applies equally to both.

The Defendants argue that the allegations in the Complaint are actually contractual in nature. Under Virginia law, the law of the place where the contract was made governs questions of interpretation, validity, and enforceability of a contract, *Johnson v. MPR Assocs., Inc.,* 894 F.Supp. 255, 258 n. 1 (E.D.Va.1994), but the law of the place of performance governs questions arising in connection with performance of contractual duties. *Ins. Co. of N. Am., Inc. v. United States Gypsum Co.,* 639 F.Supp. 1246, 1248 (W.D.Va. 1986). According to the Defendants, the contract was performed entirely in Virginia, so the Court should apply Virginia law. This argument ignores Insteel's allegations that it received, reviewed and paid the invoices in North Carolina. The Court need not address that issue, however, because the Defendants are incorrect in their conclusion that all the allegations in the Complaint are contractual in nature.

The primary basis for the Defendants' assertion is the decision of the Supreme Court of Virginia in *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.,* 256 Va. 553, 507 S.E.2d 344 (1998) ("Richmond Metro"), where the Court explained that "[i]n determining whether a cause of action sounds in contract or tort, the source of the duty violated must be ascertained." *Id.* at 558, 507 S.E.2d 344. The Defendants assert that the Costanza Contract was the only source of their duty to provide invoices in accordance with the contractual terms and, therefore, the allegations in the Complaint actually sound in contract, not tort.

This Court has previously summarized *Richmond Metro* as follows:

> In *Richmond Metro,* the Plaintiff, RMA, sued Mr. McDevitt on the grounds that he did not fulfill his contractual duties under his Design–Build contract with RMA to construct "The Diamond" in Richmond, Virginia. McDevitt allegedly submitted applications for payment containing misrepresentations as to the compliance with the design specifications.

*Godlewski v. Affiliated Computer Servs., Inc.,* 210 F.R.D. 568, 569–70 (E.D.Va.2002)

(citing *Richmond Metro.*, 507 S.E.2d at 345–46). The Supreme Court of Virginia ultimately concluded that, although McDevitt's applications for payment contained misrepresentations, the only appropriate remedy was a cause of action for breach of contract. *Richmond Metro.*, 256 Va. at 560, 507 S.E.2d 344.

The facts in *Richmond Metro* differ from those alleged in the Complaint here in two significant respects. First, McDevitt actually had failed to build to the contract specifications. It nevertheless submitted applications for payment containing sworn statements that the work was completed in accordance with the building contract. *Richmond Metro.*, 256 Va. at 555–56, 507 S.E.2d 344. The Supreme Court focused on McDevitt's acts of omission and nonfeasance in performing the contract to build, rather than on the company's false statements in the applications for payment, and concluded that McDevitt had breached the contract by failing to perform its previously made promise to build according to specifications. *Richmond Metro.*, 256 Va. at 559, 507 S.E.2d 344. Here, there is no allegation that the Defendants failed to build according the Costanza Contract, which has no set building specifications. Instead, Insteel's claims are more in the nature of malfeasance than nonfeasance.

Second, to the extent that the Supreme Court of Virginia did focus on the false statements in McDevitt's applications for payment, the Court's decision that the misrepresentations did "not give rise to a cause of action for actual fraud" was based on the particular design-build contract at issue, which affirmatively required McDevitt "to submit accurate applications for payments, and to present an accurate certificate of substantial completion and 'as-built' drawings." *Richmond Metro.*, 256 Va. at 559, 507 S.E.2d 344. Here, unlike the design-build contract at issue in *Richmond Metro*, there is no affirmative contractual requirement for sworn and truthful statements in the invoices that the Costanza Contract describes. As earlier set forth, the Costanza Contract provides, in relevant part, that:

> Weekly invoices (for work completed Wednesday thru Tuesday) will be mailed, faxed, or delivered at the job site every Wednesday (or on the day after the last day of work prior to Wednesday). Invoices will be paid in full every Friday, at the job site, before quitting time (or before quitting time on the third working day after the last day of work). The Customer shall be liable for eighteen percent (18%) per annum interest on, and all reasonable legal costs incurred collecting past due invoices.

(Costanza Contract p. 2). Thus, the contract speaks to the time, place and manner in which Costanza Construction must submit invoices, the work period that each invoice is to cover, and the time and place at which Insteel must pay the invoices. There is no contractual requirement respecting the veracity of the statements in the invoices.

As the Court of Appeals for the Fourth Circuit recognized in *Hitachi Credit Am. Corp. v. Signet Bank,* 166 F.3d 614 (4th Cir.1999), "*Richmond Metro* properly preserved the traditional distinction in Virginia law between 'a statement that is false when made (which is fraud) and a statement that becomes false only when the promisor later fails to keep his word (which is a breach of contract).'" *Godlewski,* 210 F.R.D. at 570 (quoting *Hitachi,* 166 F.3d at 631 n. 9). Here, each invoice requested payment for the previous seven day work period and did not include promises respecting future performance. Thus, the statements in the invoices were false, if at all, at the time the Defendants made them. Under Virginia law, as the Fourth Circuit explained in *Hitachi,* such falsities

give rise to an action for fraud. The Complaint's allegations are, therefore, properly characterized as sounding in tort rather than contract.

This result also accords with this Court's recent decision in *Stone Castle Financial, Inc. v. Friedman, Billings, Ramsey & Co., Inc.*, 191 F.Supp.2d 652 (E.D.Va.2002), which explained:

> Under Virginia law, a tort claim normally cannot be maintained in conjunction with a breach of contract claim except where a party establishes an independent, willful tort that is factually bound to the contractual breach but whose legal elements are distinct from it.

*Stone Castle*, 191 F.Supp.2d at 660 (citations and quotations omitted). Here, just as in *Stone Castle*, the claim for fraud is factually bound to the contract because the entire relationship between the parties, and the need to submit invoices for payment, arose from the contract. *Id.* at 660–61. Nevertheless, the fraud claim states more than a claim for negligent performance, or non-performance, of the contract and is independent from any breach of the contract; therefore, the claim is properly characterized as a tort. *Id.* at 660–61 (citing *Richmond Metro.*, 256 Va. at 559, 507 S.E.2d 344).

### B. Virginia's Choice Of Law Rule For Tort Claims

■ As both parties recognize, and as the decisional law reflects, the settled choice of law rule for tort claims in Virginia is *lex loci delicti*—the law of the place of the wrong. *Jones v. R.S. Jones and Assoc., Inc.*, 246 Va. 3, 431 S.E.2d 33 (1993). The place of the wrong for purposes of the *lex loci delicti* rule is defined as the place where the last event necessary to make an actor liable for an alleged tort takes place, even if the actor has no control over the location of that last event. *Quillen v. International Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir.1986) (finding that the law applicable to a cause of action for strict products liability comes from the jurisdiction where liability arose, which was where the plaintiff first became ill).

### C. Applying The *Lex Loci Delicti* Rule To The Second Claim For Relief (Fraud)

In Virginia, a fraud claim has several elements: " '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.' " *Stone Castle*, 191 F.Supp.2d at 662 (quoting *Hitachi*, 166 F.3d at 628). In applying the traditional *lex loci delicti* doctrine to a fraud claim, the Fourth Circuit has followed the Restatement (First) of Conflicts of Laws absent clear authority in State law adopting a different approach. In the unpublished[2] decision in *Jordan v. Shaw Industries, Inc.*, No. 96–2189, et al., 1997 WL 734029 (4th Cir. Nov. 26, 1997), the Fourth Circuit, applying the *lex loci delicti* doctrine to a fraud action, followed the Restatement (First) view, which dictates that " '[w]hen a person sustains a loss by fraud, the place of the wrong is where the loss is sustained, not where the fraudulent representations are made.' " *Id.* at *3 (quoting Restatement (First) Conflicts of Laws § 377 n. 4 (1934)). The Court then explained that the "last act" necessary for a fraud claim is the reasonable reliance on the false representation that causes the injury. *Id.* "Thus, the district court did not err in choosing, as the law governing the fraud claims, the law of the State in

---

**2.** Unpublished opinions are not binding as precedent in the Fourth Circuit and, in fact, their citation is discouraged except in unusual circumstances. 4th Cir. Local Rule 36(c). Nonetheless, unpublished decisions are of utility in assisting the analysis of the issues.

which each plaintiff respectively was headquartered and received defendant's [misrepresentations]." *Id.*

The Fourth Circuit noted that the district court had erred in applying the "most significant relationship" test from the Restatement (Second) of Conflicts of Laws because the Supreme Court of North Carolina has "consistently held that the *lex loci delicti* doctrine applies to actions surrounding in tort." *Id.* at *2. Virginia also has expressly rejected the "most significant relationship" approach to multistate tort actions. *Jones v. R.S. Jones & Assocs.*, 246 Va. 3, 5, 431 S.E.2d 33 (1993) (explaining that in *McMillan v. McMillan*, 219 Va. 1127, 253 S.E.2d 662 (1979), the Court had declined an invitation to adopt the so-called "most significant relationship" test, recommended by the Restatement (Second) of Conflicts of Laws, and that the Court would continue to adhere to the *lex loci delicti*, or place of the wrong, standard that had been "the settled rule in Virginia.").

■ Here, the Complaint alleges that Insteel's representative was in Mount Airy, North Carolina when he or she received and relied on the allegedly false invoices and it also alleges that Insteel paid those invoices from its headquarters in Mount Airy. (Compl.¶¶ 67, 70). Thus, the alleged damage was done, and the alleged loss was sustained, in North Carolina. Applying the Virginia choice of law rules to these facts, which are presumed true when addressing the Defendants' motion to dismiss, the law of North Carolina governs the fraud alleged in the Second Claim.

■ What remains, then, is to determine whether North Carolina law allows Insteel to pursue the tort claim in the Complaint, as distinct from the breach of contract claim. North Carolina law recognizes the independent tort exception in breach of contract cases. *Strum v. Exxon*

*Co.*, 15 F.3d 327, 330 (4th Cir.1994). Under this principle, where a breach of contract also constitutes an independent and identifiable tort, a plaintiff may pursue a tort action. *Id.* at 330–31. The mere failure to carry out a promise in the contract, however, does not support a tort action for fraud. *Id.* at 331.

As earlier explained, the allegations in the Second Claim are independent of any alleged breach of contract because the contract did not affirmatively require truthful invoices and because the tort allegations are not premised on any failure to perform contractual duties. Insteel has alleged the identifiable tort of fraud and has asserted facts addressed to each element of its fraud claim, which facts are independent from the contractual obligations. Consistent with the independent tort exception, the Complaint alleges that the Defendants breached their duty not to intentionally misrepresent present facts to obtain money from others. That claim "emerges from duties individuals owe generally to other members of society" and does not merely "arise[ ] out of the attempt by private individuals to order relationships among themselves." *Strum*, 15 F.3d at 330 (explicating the distinction between the goals of tort and contract law); *see also Oestreicher v. Am. Nat. Stores, Inc.*, 290 N.C. 118, 136, 225 S.E.2d 797 (1976) (permitting the plaintiff to assert tort claims, which incorporated the allegations in its breach of contract claims, because the defendant's intentional misstatements smacked of tort and caused the plaintiff economic injury and because the fraud and deceit involved made it unjust to allow the defendant to pay merely that which the contract required it to pay in the first place). As a result, the Second Claim survives the Defendants' motion to dismiss.

**D. Applying The Lex Loci Delicti Rule To The Third Claim For Relief (Unfair and Deceptive Trade Practices)**

■ In the Third Claim, Insteel alleges that the Defendants' conduct constituted unfair and deceptive acts or practices within the meaning of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen.Stat. § 75–1.1. (Compl.¶ 75). Citing *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir.1998), the Defendants point out that "a party is not liable under [the Act] if the dispute at issue is an ordinary contract dispute." *Edmondson v. Am. Motorcycle Ass'n., Inc.*, 7 Fed.Appx. 136 (4th Cir.2001) (unpublished) (citing *Broussard*, 155 F.3d at 345). As explained above, however, the facts giving rise to the Second and Third Claims are tortious in nature and present distinct elements from an ordinary contract dispute. Thus, that aspect of the *Broussard* decision is inapplicable here.

The Defendants next cite *Edmondson* for the premise that, as a choice of law matter, one must apply a "most significant relationship" analysis to determine whether the Act is applicable. In *Edmondson*, the Fourth Circuit explained that:

> *[W]hen the place of injury is open to debate* in regard to an unfair trade practices claim, *North Carolina choice of law rules* require a court to apply the law of the state with the most significant relationship to the transaction.

*Edmondson*, 7 Fed.Appx. at 150 (emphasis added). It is clear that no such "most significant relationship" analysis is necessary in this action for two reasons.

First, and most apparent, Virginia, not North Carolina, choice of law rules dictate the law applicable in this action. Second, because the Court regards the facts in the Complaint as true for purposes of a motion to dismiss under Rule 12(b)(6), the place of injury with respect to the Defendants' alleged violation of the Act is not "open to debate." As the Fourth Circuit explained in *Edmondson*:

> In order to prevail on a § 75–1.1 claim, a plaintiff must show: (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) proximately causing actual injury to the plaintiff or the plaintiff's business.

*Edmondson*, 7 Fed.Appx. at 151. Here, the allegedly unfair or deceptive acts (the invoices containing the alleged intentional misrepresentations) caused Insteel's injury, if at all, when Insteel relied on the invoices to its detriment. Both the reliance (Watt's review of the each invoice) and the detriment (Insteel's issuance of checks in full payment for each invoice) occurred in North Carolina. Therefore, the place of the injury is undoubtedly in North Carolina. Although the repairs that the Defendants performed pursuant to the Costanza Contract occurred entirely at Insteel's facility in Virginia, Insteel has not alleged any injury to that facility as a result of the Defendants' allegedly unfair and deceptive practices.

■ Finally, the Defendants contend that a choice of law analysis is inappropriate, apparently arguing that the Act is inapplicable in this action as a matter of due process. In support of this contention, the Defendants cite *Franchise Tax Bd. v. Hyatt*, — U.S. —, 123 S.Ct. 1683, 155 L.Ed.2d 702 (2003), which quotes *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) and *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), for the premise that:

> " 'For a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or some significant aggregation of contacts, creating state

interests, such that choice of its law is neither arbitrary nor fundamentally unfair." '

*Hyatt*, —— U.S. at ——– ——, 123 S.Ct. at 1687–88 (quoting *Phillips Petroleum*, 472 U.S. at 818, 105 S.Ct. 2965 (quoting *Hague*, 449 U.S. at 312–13, 101 S.Ct. 633)). *Hyatt*, *Phillips Petroleum*, and *Hague*, however, were decisions addressing whether the Full Faith and Credit Clause of the Constitution of the United States prohibited a state court from applying forum law to claims with which the forum state had no significant contacts. That situation is not presented here.

In this action, a federal district court sitting in Virginia must determine whether to apply North Carolina tort law, which the Virginia choice of law rules dictate is the applicable law. There is no question that applying the North Carolina statute would accord full faith and credit to the laws of North Carolina, and there is no fear that a court sitting in Virginia would fail to give full faith and credit to the laws of Virginia in favor of another State's laws.

The Defendants have not presented the Court with any authority requiring a minimum contacts analysis in the situation presented here, that is, where the forum's established choice of law rules require the Court to apply the laws of a sister state. Moreover, even if the Defendants were correct that significant North Carolina contacts are here required, it is evident that such contacts are present. Insteel is a North Carolina resident that claims to have suffered injury at its headquarters in North Carolina. Insteel also claims that the last act necessary to create liability under the Act occurred in North Carolina. The Supreme Court of the United States recognized in *Hyatt* that " '[t]he State where the tort occurs certainly has a concern in the problems following in the wake of the injury.' " *Hyatt*, —— U.S. at ——, 123 S.Ct. at 1688 (quoting *Carroll v. Lan-*

za, 349 U.S. 408, 413, 75 S.Ct. 804, 99 L.Ed. 1183 (1955)). And, there is no question that North Carolina has a significant interest in applying its tort law to acts that occur withing its borders and that injure its citizens. Thus, as in *Hyatt*, minimum contacts are "manifest in this case." *Hyatt*, —— U.S. at ——, 123 S.Ct. at 1688.

**CONCLUSION**

In sum, the Defendants' Motion To Dismiss is DENIED because: (1) the facts alleged in support of the Complaint's Second and Third Claims for Relief are in the nature of tort, not breach of contract; (2) the last acts necessary to establish liability for the torts alleged in the Second and Third Claims for Relief occurred in Mount Airy, North Carolina; (3) under these circumstances, the Virginia choice of law rules require the Court to apply North Carolina substantive law; (4) under North Carolina law, the tort claims here asserted are independent from any available breach of contract claims and, therefore, Insteel may assert both claims; and, (5) although there is no need to examine North Carolina's contacts with the claims asserted in this action, North Carolina has significant contacts with the tort claims here at issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.